In the Matter of the Claim of MODESTA DIAZ, Respondent, against ULSTER VEGETABLE GROWERS CO-OPERATIVE, INC., et al., Appellants, and MICHAEL J. MAHONEY et al., Respondents.

WORKMEN's COMPENSATION BOARD, Respondent.

Third Department, July 2, 1953.

*Charles P. Barre* for American Employers' Insurance Company, appellant.

*John L. Larkin* and *John E. Egan* for Ulster Vegetable Growers Co-operative, Inc., appellant.

*Charles H. Gaffney* for Michael J. Mahoney, respondent.

*Salvatore M. Lo Monaco* for National Grange Mutual Liability Insurance Company and another, respondents.

*Arthur J. Murphy* and *Louis L. O'Brien* for G. Chandler Young and another, respondents.

*Samuel Popish* and *A. F. Perl* for claimant-respondent.

*Nathaniel L. Goldstein, Attorney-General,* for the Workmen's Compensation Board, respondent.

IMRIE, J. In a decision on the claims of Modesta Diaz and nine others similarly situated Workmen's Compensation Board had determined the existence of a joint employer-employee relationship between Ulster Vegetable Growers Co-operative, Inc., Michael J. Mahoney and claimants, and had discharged G. Chandler Young and his insurance carrier from liability on the claims. An award was made in this claimant's favor against Ulster and Mahoney as well as their respective insurance carriers. Ulster and its carrier, American, have separately appealed from the decision and award. Neither Mahoney nor his carrier, National Grange, has appealed, though Mahoney here asks reinstatement of the referee's decision determining a sole employer-employee relationship between him and claimant, while National Grange asks that the award be extended to include Young and his insurance carrier, Merchants Mutual.

Ulster, a membership corporation, was organized as an agency to secure seasonal employees for its fourteen members. In 1949 and again in 1950 Ulster procured for its members and brought to Ulster County, New York, certain farm laborers from Puerto Rico. Arrangements for recruiting and transporting such men, as well as the contracts with the individuals brought in, were subject to the approval of the Labor Commissioner of Puerto Rico. The contract with claimant was printed in English and Spanish. It designated Ulster as employer and claimant as its employee. It provided for an hourly pay rate with a minimum number of hours of employment. Ulster agreed to furnish subsistence from the time of the claimant's departure from Puerto Rico until his return thereto and to make reports to such Labor Commissioner every four weeks showing the

number of hours he worked. Ulster also agreed to procure and maintain a policy of insurance at its own expense for claimant as in workmen's compensation and to assume " the risks, and liability to the Employee which would be covered by such policy should he fail to procure and provide for such insurance coverage." The employee was to be required to work only for the employer (Ulster) though there was a provision that, subject to the consent of the claimant and said Labor Commissioner, with the certificate of United States Employment Service, he could be transferred to another employer upon the latter's entering into a new contract with him, identical in all respects with the original contract between him and Ulster.

Although the contract was precise in its terms as to the identity of the employer and strictly limited the means by which a change of employers could be effected, it appears to have been the practice, when the laborers reported to Ulster, to give them individual numbers and to assign certain of them to each of Ulster's members. If such member could not use the men so assigned to him at any particular time, they were temporarily assigned to another member who had work for them. A laborer assigned to a member could not work for another without the former's consent but, as a matter of convenience, the temporary transfer of a laborer to another member was carried out through the medium of Ulster. Wages were paid by the farmer to whom the worker was first assigned, he being reimbursed therefor by the one to whom services were actually rendered.

Ulster maintained a labor camp where it furnished board and lodging to the laborers. The charge for such maintenance was paid by the farmers to whom the men were assigned and deducted from their wages. When the 1950 detachment of laborers arrived at Ulster's camp, several, including claimant, were assigned to respondent Young. As he was not able to use them immediately, those men were taken over for their first work by Mahoney, who, as was required, picked them up at the camp to transport them to his farm and return them at the end of the day. On the return trip, after the first day's work, the Mahoney truck was in a collision, from which claimant's injuries resulted.

The employment contract was complete, clear and unambiguous as to the relationship of Ulster, as employer, and claimant, as employee. It provided for the method to be followed in case of the transfer of claimant to another employer, which was not complied with by Ulster if it intended to transfer employment of claimant to one or another of its members. It is stipulated

that neither claimant nor the Government of Puerto Rico knew of any transfer of Ulster's contractual obligations to any other person. Ulster could be released from the requirements of its contract only in the manner there specified. Ulster was actually claimant's general employer.

" The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employee between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employees. (*Comerford's Case,* 224 Mass. 571, 573.) Thus at one and the same time they are generally the employees of the general employer and specially the employees of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the Workmen's Compensation Law they may, so far as its provisions are applicable, look to the one or to the other or to both for compensation for injuries due to occupational hazards (Workmen's Compensation Law * * * § 3, subds. 3, 4), and the industrial commission may make such an award as the facts in the particular case may justify." (*Matter of De Noyer* v. *Cavanaugh,* 221 N. Y. 273, 275–276, cited in *Matter of Dennison* v. *Peckham Road Corp.,* 295 N. Y. 457, 460–461.)

Mahoney, participating in Ulster's plan of operation under the terms of its contract with claimant by accepting and paying for claimant's work on his farm, became also his employer. While claimant was nominally assigned to Young, he never reported to Young, performed no work for him and was actually subject to no directions from him. No employment relationship is shown to have existed between them.

The evidence sustains the determination of the board that both Ulster and Mahoney were employers of claimant and that Young was not his employer.

The board held that Ulster's policy with American was effective for the period from July 2, 1949 to July 2, 1950, and that it covered claimant and his employment. Jurisdiction to determine the extent of policy coverage resides in the board. (*Levine* v. *East New York Elec. Corp.,* 210 App. Div. 730; *Matter of McMahon* v. *Gretzula,* 227 App. Div. 256.) In its written terms the policy covered " All business operations, including the operative management and superintendence thereof, conducted at or from the locations and premises defined above as declared

in each instance by a disclosure of estimated remuneration of employees under such of the following DIVISIONS as are undertaken by this Employer. * * * 5. *Operations not on the premises.*" Under the classification of operations the policy read, " Camp Operation — Recreational Or Educational — *All Employees,* Including Musicians, Players or Entertainers; Clerical Office Employees; (Operation Of Commercial Farm To Be Separately Rated.) " (Emphasis supplied.) In Item 4 it stated, " The foregoing estimates of remuneration are offered for the purpose of computing the advance premium. The Corporation shall be permitted to examine the books of this Employer at any time during the Policy Period and any extension thereof and within one year after its final termination so far as they relate to the remuneration earned by any employees of this Employer while the Policy was in force."

The omission, if such there was, on the part of Ulster to advise American of its contractual election to secure compensation for these farm laborers as permitted by the law cannot affect the rule that the policy, when issued, became a contract with claimant, binding on the carrier until cancelled as provided in section 54 of the Workmen's Compensation Law. (*Matter of Aioss* v. *Sardo,* 223 App. Div. 201, affd. 249 N. Y. 270; *Matter of Di Donato* v. *Rosenberg,* 256 N. Y. 412.) In the *Aioss* case (p. 203) Presiding Justice VAN KIRK said, " Whatever the rights may be between the carrier and the insured employer, so long as the policy, once it is issued, is outstanding, the carrier's liability to the injured employee remains. No question of warranties or of false representations made by the employer in securing the policy and no stipulations of the policy as between the employer and carrier have force or effect as between the carrier and such an employee who was injured while the policy is outstanding."

The decision and award should be affirmed with one bill of costs to be divided equally between respondents filing a brief and with printing disbursements to each.

FOSTER, P. J., BERGAN, COON and HALPERN, JJ., concur.

Decision and award unanimously affirmed, with one bill of costs to be divided equally between respondents filing a brief and with printing disbursements to each.