NORAH ADELL LEGGETTE, WIDOW, AND NORAH ADELL LEGGETTE, NEXT FRIEND OF MAVIS LEGGETTE CARLILES, BRENDA DARNELLE LEGGETTE, JUDY CAROLINE LEGGETTE, DOROTHY LOU ANN LEGGETTE, MINOR CHILDREN OF CLAYTON LEE LEGGETTE, DECEASED, EMPLOYEE v. J. D. McCOTTER, INC., EMPLOYER, AND CASUALTY RECIPROCAL EXCHANGE, CARRIER; AND CROWDER CONSTRUCTION COMPANY, EMPLOYER, AND AETNA CASUALTY & SURETY COMPANY, CARRIER.

(Filed 24 November, 1965.)

**1. Master and Servant § 51—**

The operator of heavy equipment may be held the employee of both the general employer and the special employer with regard to liability under the Workmen's Compensation Act when the general employer leases the heavy equipment to a special employer who directs the work being performed and who has the power of terminating the employment at the work site but no power to terminate the general overall employment.

**2. Same— Findings, supported by evidence, held to support conclusion that liability for award should be split between general and special employers.**

The evidence tended to show that the general employer leased heavy equipment with operator at a stipulated sum per hour to the special employer, that both the general and special employers were subject to the Workmen's Compensation Act in regard to the injury in suit, that the operator had exclusive control of the equipment but that the particular work to be done with the equipment was under the direction of the special employer, who could terminate the employment at the site but not the general employment, and that on the occasion in question the operator was using the equipment in aiding the employees of the special employer in raising a steel beam in place under the supervision of the special employer's superintendent of construction, and that while the beam was being raised it fell back and fatally injured the equipment operator. *Held:* The evidence is sufficient to support the findings and conclusions of the Industrial Commission that at the time of the injury the operator was in the dual employment of both the general and special employers, and that the award for compensation should be split between them and their insurance carriers.

BOBBITT, J., concurs in result.

APPEAL by defendants Crowder Construction Company and Aetna Casualty & Surety Company from *Hubbard, J.,* November Session 1964 of BERTIE.

These defendants appeal from an order signed on 20 February 1965, remanding this case to the Industrial Commission for specific findings of fact that the deceased employee, Clayton Lee Leggette (Leggette), was subject to the direction and control of defendant Crowder Construction Company (Crowder); and for an award against defendant Crowder and defendant Aetna Casualty & Surety Company (Aetna); and for a finding that defendant J. D. McCotter, Inc. (McCotter) and Casualty Reciprocal Exchange (Exchange) are not liable in any respect, the Industrial Commission having affirmed the hearing commissioner who split the workmen's compensation award between the two employer defendants and their carriers.

The evidence adduced before the hearing commissioner tends to show that defendant Crowder in May 1963 was engaged in constructing a school building on U. S. Highway 13 in Windsor, North Carolina. Defendant McCotter, with its principal place of business in Washington, North Carolina, sells building supplies, manufactures building block, operates "Ready-Mix" concrete plants, and occasionally rents to its building supply customers pieces of heavy equipment. McCotter owned a Hough front-end loader valued at $16,000 to $18,000, which was rented to Crowder in November 1962 at a rate of $10.00 per hour; this rental covered the services of Leggette, the operator of the front-end loader.

Leggette, from November 1962 until the time of his accidental death on 14 May 1963, worked at the site of the school construction project in Windsor. Leggette was under the supervision of Fred S. Kennedy (Kennedy), Crowder's superintendent of the school construction project. Leggette drove a McCotter truck from his home in Washington to Windsor every workday, carrying his tools, fuel and "what not" for servicing the front-end loader. McCotter paid Leggette a wage of $65.00 per week when he worked regularly, and billed Crowder monthly for the use of the front-end loader and operator. Leggette had been employed by McCotter, at intervals, for the five years prior to his death. Leggette was shown on the Social Security records of McCotter and McCotter paid workmen's compensation and unemployment insurance on Leggette. The undisputed evidence tends to show that Crowder had authority to terminate Leggette's employment at the Crowder site but only McCotter could terminate Leggette's general employment.

Leggette used the loader to push and load dirt and other materials and to do whatever he was called upon to do with the loader by Kennedy. "The machine was at Crowder's disposal and so was Lee (Leggette)." Kennedy testified, "There was nobody (who) could even start it (the loader) up. He (Leggette) was in the entire charge of that machine and he was the * * * boss of that machine. I told him what I wanted done with the machine. * * * We used the machine as a multi-purpose machine, not for just digging dirt. It does anything you need if you pay ten bucks an hour. Mostly Mr. Leggette moved earth. If I told him to move something else he did if he could. He loaded trucks, pulled them out of the ditch, even poured concrete with the bucket. I told him to pour concrete. * * * I directed him what I wanted him to do."

On the day of the accident, six laborers, under Kennedy's supervision, were attempting to place a steel I-beam, weighing about 565 pounds, sixteen feet long, on top of two vertical columns, ten feet high, sixteen feet apart. "I (Kennedy) did not let it be known to him (Leggette) that I wanted the beams put up there, we were putting them up and he volunteered to sit it up for me. He was pulling the subgrade down to haul stone on it in order to pour the floor and we were working right in the cafeteria area, he was grading * * *. He stopped doing that about ten minutes before we started to move the beams. He stopped doing it and came over there where the beams were because we were straining out there in the mud and he came over and said he would help us, and I accepted the help. I was in charge of putting up the beam. To my knowledge this machine hadn't been used to lift any beams prior to this." Kennedy also testified with respect to lifting the beam by use of the front-end loader, "If I had told him not to do it he wouldn't have done it."

Crowder's employees placed the steel beam on the bucket of the front-end loader. Kennedy placed a hand on the beam "to put it into position like I (Kennedy) wanted it." Kennedy then ordered Leggette to lower the steel beam after it was first lifted, and Leggette "backed off and put a track under there so he could get it exactly right." In the process of lifting the beam the second time, Leggette apparently pushed the wrong valve or lever, causing the bucket to turn, and the steel beam fell on Leggette, causing injuries from which he died on that day.

George Lewis Simpson, one of defendant Crowder's truck drivers, testified, "On May 14th I was working for Mr. Kennedy and he was my boss. * * * I was present there when they were lifting a beam involving Mr. Leggette and some of the other fellows working for

Crowder Construction Company. When they laid the beam up on the bucket I asked Mr. Kennedy did he think I better get the chains out of my truck and fasten that beam to the bucket before they picked it up and he said, 'I don't think it will be no danger in it,' and I said, 'I know some danger in it, best to fasten it down.' "

From the order entered in the court below, defendants Crowder and Aetna appeal, assigning error.

*Carter & Ross for plaintiff appellees.*

*Young, Moore & Henderson by B. T. Henderson, II, and J. Allen Adams for defendant appellants.*

*Barden, Stith, McCotter & Sugg by D. C. McCotter, Jr., for defendant appellees.*

DENNY, C.J. The determinative question on this appeal, based on the facts revealed by the record, is simply this: Is Crowder or McCotter, or both of them, together with their carriers, liable to the plaintiffs as the result of the death of Leggette?

In *Weaver v. Bennett*, 259 N.C. 16, 129 S.E. 2d 610, a statement from *Nepstad v. Lambert* (Minn.), 50 N.W. 2d 614, is quoted as follows:

" 'Though well established, the loaned-servant principle has proved troublesome in its application to individual fact situations. The criteria for determining when a worker becomes a loaned servant are not precise; as a result, the state of the law on this subject is chaotic. Respectable authority for almost any position can be found, for even within a single jurisdiction the decisions are in conflict.' "

In the instant case, both the general employer and the special employer were subject to the provisions of our Workmen's Compensation Act at the time of the injury and death of Leggette. This factual situation did not exist in *Shapiro v. Winston-Salem*, 212 N.C. 751, 194 S.E. 479, or in *Weaver v. Bennett, supra*. Therefore, the identical question presented here was not before the Court for determination in either of those cases.

In 99 C.J.S., Workmen's Compensation, § 47, page 242, *et seq.*, it is said:

"* * * (A)n employee may simultaneously be in the general employment of one employer and in the special or temporary employment, for a particular purpose or occasion, of another, with all the legal consequences of the relation with the latter.

"Where such dual relationship exists, an employee injured in the special employment may, according to some authorities, be granted compensation as against either employer or against both, at least where at the time of the injury both the general and the special employers exert over the employee some measure of control, not necessarily complete, and there is a common or joint participation in the work and benefit to each from its rendition."

Likewise, in Workmen's Compensation Law by Larson, Vol. I, § 48.23, at page 716, we find the following statement:

"The closest cases are those in which the 'business' of the general employer consists largely of the very process of furnishing equipment and employees to others. When, for example, a truck owner furnishes trucks and drivers at a profit to himself for the regular use of the special employer, it might at first seem that the bulk of the work being done is that of the special employer, and special employers have been held liable, in these circumstances. But it is also possible to say that the owner is advancing his own business, which is simply the business of furnishing such equipment and labor for profit, and, particularly when the facts show ultimate retention of control for the protection of expensive equipment, it is quite common to find the general employer remaining liable. * * *"

Also from the last cited authority, § 48.30, at page 719, it is said:

"The factor that seems to play the largest part in lent-employee cases is that of furnishing heavy equipment. Many cases have found continuing liability in the general employer when he furnishes operators together with road equipment, excavating equipment, steam and truck shovels, trucks, air drills, air riveters and barges. Although there are *contra* cases, the majority of the decisions have been influenced by the arguments both that the general employer would naturally reserve the control necessary to ensure that his equipment is properly used, and that a substantial part of any such operator's duties would consist of the continuing duty of maintenance of the equipment."

In § 48.40, pages 719 and 720 of Larson's Workmen's Compensation Law, we find the following:

"Joint employment occurs when a single employee, under contracts with two employers, simultaneously performs the work of

both under the control of both. In such a case, both employers are liable for workmen's compensation. * * *

"There has always been a noticeable reluctance on the part of Anglo-American courts to emulate the wisdom of Solomon and decree that the baby be divided in half. Courts are showing an increasing tendency, however, to dispose of close lent-employee cases by adopting this sensible compromise, rather than by insisting on an all-or-nothing choice between two employers both bearing a close relation to the employee. * * *"

We think the work being done at the time of Leggette's death was beneficial to McCotter and Crowder. It was a practice of McCotter to rent pieces of heavy equipment to its customers, and Crowder was a customer of McCotter. McCotter was receiving $10.00 per hour for the use of the front-end loader and the operator of this heavy piece of equipment rented to Crowder. It made no difference to McCotter whether Leggette was loading trucks, excavating, or pouring cement, he got the same amount as rental for the equipment and the operator. Crowder's superintendent testified with respect to the use Crowder made of the machine. "It does anything you need if you pay ten bucks an hour. Mostly Mr. Leggette moved earth. If I told him to move something else he did if he could. He loaded trucks, pulled them out of the ditch, even poured concrete with the bucket. I told him to pour concrete. * * * I directed him what to do."

The evidence is also to the effect that at the time Kennedy was supervising the attempt to place the steel beam with six laborers, Leggette was operating the front-end loader in that very area, pulling the subgrade down in order to pour the floor in the cafeteria area. Leggette stopped the machine and "came over there where the beams were because we were straining out there in the mud and he came over and said he would help us, and I (Kennedy) accepted the help."

The evidence on this record supports the conclusion that Leggette had complete charge of the front-end loader. He was responsible for its repair and maintenance as well as for its operation. Crowder could have stopped Leggette if his work had been unsatisfactory, but Crowder did not have the authority to discharge him and assign one of Crowder's own employees to operate the front-end loader. However, Crowder's evidence does support the view that Leggette was completely under the direction of Kennedy with respect to the type of work to be done with the front-end loader. In fact, Kennedy, Crowder's superintendent, testified with respect to lifting the steel

beam by use of the front-end loader, "If I had told him not to do it he wouldn't have done it."

We think the facts here support the view that plaintiffs had the right to proceed against either Crowder or McCotter, or both.

In *Famous Players Lasky Corp. v. Industrial Accident Com'n.*, 228 P. 5 (Cal.), an aircraft corporation rented an airplane and pilot to the picture corporation by the day. The picture corporation was to give the pilot orders as to the flights to be made in connection with the filming of a picture. After a trial run, the picture corporation told the pilot he would have to fly lower. While flying at 75 feet he struck an air pocket and crashed. Both employers were held liable for workmen's compensation.

In the case of *De Noyer v. Cavanaugh*, 116 N.E. 992 (N.Y.), De Noyer was employed by Cavanaugh as a truck driver. Cavanaugh arranged with an Oil Company to furnish a horse and driver to be used in connection with a tank wagon of the Oil Company for delivery of oil and gasoline. While De Noyer was employed by the Oil Company for this purpose, he was accidentally killed. The Court said:

> "Even where no property of the general employer is intrusted to the employe to be used in the special employment, the general employer pays the compensation, may direct the employe when to go to work, and may discharge him for refusal to do the work of the special employer. The Industrial Commission, therefore, has full power to make an award against the general employer. It does not follow that by the application of this rule the special employer is not to be held in any case. The fact that a workman has a general and a special employer is not inconsistent with the relation of employer and employe between both of them and himself. If the men are under the exclusive control of the special employer in the performance of work which is a part of his business, they are, for the time being, his employes. *Comerford's* Case, 224 Mass. 571, 573, 113 N.E. 460. Thus at one and the same time they are generally the employes of the general employer and specially the employes of the special employer. As they may under the common law of master and servant look to the former for their wages and to the latter for damages for negligent injuries, so under the Workmen's Compensation Law they may, so far as its provisions are applicable, look to the one or to the other, or to both, for compensation for injuries due to occupational hazards * * * and the Industrial Commission

may make such an award as the facts in the particular case may justify. * * *"

In *Dennison v. Peckham Road Corporation*, 295 N.Y. 457, 68 N.E. 2d 440, Bouley & Company, a contractor, engaged in excavating a cellar, leased a power shovel from Peckham and engaged one Roitoro an employee of the lessor, to assist in operating the shovel. Roitoro was killed in the course of this employment. The Workmen's Compensation Board found that the lessor and lessee were general and special employers respectively and apportioned the award equally between the two. The Appellate Division reversed the award as to Peckham, the general employer, and its carrier, and directed that the proceeding be remanded to the Board for the purpose of making an award solely against Bouley. The Court of Appeals of New York reversed the Appellate Division and affirmed the award of the Workmen's Compensation Board.

In the case of *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 78 P. 2d 868, a cement company engaged in quarrying work rented certain blasting equipment and loaned men to an ice company for the purpose of blasting rock in a sewer ditch being constructed, generally, under the supervision of the ice company. The workmen continued at all times in the employ of the cement company, which paid them less than it received from the ice company for their work and which retained full power to discharge them. Both the cement company and the ice company and their insurance carriers were held liable for compensation to a workman who was injured by an explosion while working in the sewer ditch.

In *Scott v. Savannah Electric & Power Co.*, 84 Ga. App. 553, 66 S.E. 2d 179, an employee was directed by his general employer to do certain work for an electric company and received injuries arising out of and in the course of his employment with the electric company. The Court held the employee was a special employee of the electric company at the time of his injury and could recover compensation from either employer or both.

In the case of *Wing v. Clark Equipment Co.*, 286 Mich. 343, 282 N.W. 170, plaintiff was an efficiency engineer for Corporations Auxiliary Company, said company hiring him out to industrial plants, who would place himself among the workers of its plant to determine production efficiency. While so engaged for defendant, plaintiff was injured. The Michigan Court held that plaintiff was an employee of both corporations for the purpose of determining rights under the Workmen's Compensation Act and that under such dual employment

both employers could be held liable for compensation for injuries to the employee.

In *Hobelman v. Mel Krebs Construction Co.,* 188 Kan. 825, 366 P. 2d 270, the claimant, Herman Hobelman, regularly worked for Joe Kreutzer Construction Company (Kreutzer), a general contractor. This company owned a large crane and made a business of renting it to other contractors in the same area. Respondent Mel Krebs Construction Company (Krebs) was also a general contractor in said area. On the date claimant sustained his accidental injuries Krebs was constructing a building in Garden City, Kansas. It was agreed between Kreutzer and Krebs that Kreutzer would furnish to Krebs the crane and operator for the purpose of setting steel beams at the Garden City project. Hobelman was not the crane operator but was assigned to help assemble the crane. Krebs requested Hobelman to remain and help in setting the steel beams because Krebs was shorthanded. Kreutzer acceded to the request of Krebs and Krebs was to pay Kreutzer $2.00 per hour for Hobelman's services. Hobelman was kept on the payroll of his general employer. Hobelman was injured while engaged in the course of his employment with Krebs. The Supreme Court of Kansas held both the general and special employers liable and quoted the following from the opinion in the case of *Mendel v. Fort Scott Hydraulic Cement Co., supra:*

> " 'Where a general employer loans his workman to another and directs him to do certain work which is being done under the supervision and control of such other or special employer, and which work is also a part of the general employer's trade or business in which injuries are compensable under the compensation act, and the workman continues at all times in the employ of the general employer who pays his compensation and who remains vested with full power to discharge him for refusal to do the work for the special employer which he was directed to do, such employee, if injured while engaged in such work, may look to both employers and their respective insurance carriers for compensation.' "

Among the other cases holding that a lent employee who is injured in special employment may recover from either the special or the general employer, or both, we cite: *Wright v. Cane Run Petroleum Co.,* 262 Ky. 251, 90 S.W. 2d 36; *Lunday v. Department of Labor and Industries,* 94 P. 2d 744 (Wash.); *Hill v. Samaritan Hospital,* 75 N.Y.S. 2d 718; *Cook v. Buffalo General Hospital,* 308

N.Y. 480, 127 N.E. 2d 66; *Diaz v. Ulster Vegetable Growers Co-Operative,* 282 App. Div. 426, 123 N.Y.S. 2d 321; *Bright v. Bragg,* 175 Kan. 404, 264 P. 2d 494; *National Automobile Ins. Co. v. Industrial A. Com'n.,* 143 P. 2d 481 (Cal.); 152 A.L.R., Anno. — Workmen's Compensation — Special Employer, page 816, *et seq.*

In our opinion, the findings of fact of the hearing commissioner which were adopted as the findings of the full Commission, are supported by competent evidence and are sufficient to support the conclusions of law upon which the award was made.

The judgment of the court below is reversed and this cause is remanded for entry of judgment affirming the award of the Industrial Commission.

Reversed and remanded.

BOBBITT, J., concurs in result.