IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-267

Filed 19 December 2023

North Carolina Industrial Commission, IC No. 19-720164

STEPHEN MATTHEW LASSITER, Employee, Plaintiff,

v.

ROBESON COUNTY SHERIFF'S DEPARTMENT, Alleged-Employer, SYNERGY COVERAGE SOLUTIONS, Alleged-Carrier, TRUESDELL CORPORATION, Alleged-Employer, THE PHOENIX INSURANCE CO., Alleged-Carrier, Defendants.

Appeal by Defendants from opinion and award entered 17 November 2022 by the North Carolina Industrial Commission. Heard in the Court of Appeals 23 August 2023.

> *Musselwhite Musselwhite Branch & Grantham, by Stephen C. McIntyre, for Plaintiff-Appellee.*
>
> *Goldberg Segalla LLP, by Gregory S. Horner and Allegra A. Sinclair, for Defendant-Appellants Robeson County Sheriff's Department and Synergy Coverage Solutions.*
>
> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones, Neil P. Andrews, and Brennan C. Cumalander, for Defendant-Appellees Truesdell Corporation and The Phoenix Insurance Co.*

GRIFFIN, Judge.

Defendant Robeson County Sheriff's Office[1] and Synergy Coverage Solutions

---

[1] Though the caption on appeal from the Industrial Commission references the party as the "Department," we use Robeson County Sheriff's "Office" throughout.

(collectively, "RCSO") appeal from an opinion and award of the Full Commission of the North Carolina Industrial Commission awarding Plaintiff, Stephen Matthew Lassiter, ongoing medical expenses, to be paid solely by RCSO; and dismissing Defendant-Appellees, Truesdell Corporation and The Phoenix Insurance Company (collectively, "Truesdell"). RCSO argues the Full Commission erred in concluding Plaintiff was an employee of RCSO at the time of his injury, or in the alternative, the Full Commission erred in concluding Plaintiff was not jointly employed by both RCSO and Truesdell at the time of his injury. We hold Plaintiff was jointly employed by RCSO and Truesdell at the time of his injury making both RCSO and Truesdell jointly liable for Plaintiff's workers' compensation.

## I.    Factual and Procedural History

On 5 October 2017, Truesdell contracted with the North Carolina Department of Transportation ("NCDOT") to perform bridge preservation work along Interstate 95 in Cumberland and Robeson Counties. Within the contract, NCDOT required Truesdell to have law enforcement officers on scene, with blue lights activated, to direct traffic in accordance with an independently created traffic control plan. Pursuant to a referral by NCDOT, Truesdell engaged Captain Obershea of RCSO and Chief Edwards of Fairmont Police Department to secure law enforcement officers to perform the required traffic control work.

On 28 March 2019, upon reviewing the proposed traffic control plan, Captain Obershea and Chief Edwards agreed they would need additional officers to carry out

the plan. After NCDOT and Truesdell signed off on their request for additional officers, Captain Obershea contacted Plaintiff, a deputy with the Robeson County Sheriff's Office, to inform him of the work opportunity. Plaintiff, who was off duty at the time, accepted.

Plaintiff reported to his designated position in his unmarked patrol car and began performing his assigned duties. At around 12:00 a.m., Captain Obershea directed Plaintiff to switch positions with him. Sometime after moving to Captain Obershea's position, Plaintiff was struck by a vehicle and sustained injuries to his head, arms, hands, and legs. Due to the severity of injuries, Plaintiff was airlifted to a hospital in Florence, South Carolina. Plaintiff underwent extensive treatment and two subsequent surgeries.

On 15 April 2019, Plaintiff, in seeking workers' compensation, filed a Form 18 notice of accident to employer, listing both RCSO and Truesdell as his employers at the time of injury. Both RCSO and Truesdell denied the existence of employment. Plaintiff filed a Form 33 request for hearing.

On 12 July 2021, subsequent to a hearing on the matter, Deputy Commissioner Peaslee entered an opinion and award, concluding Plaintiff was employed by RCSO at the time of his injury, but that no employment relationship existed between Plaintiff and Truesdell. Deputy Commissioner Peaslee dismissed Truesdell from the claim. On 19 July 2021, RCSO appealed to the Full Commission. On 17 November 2022, the Full Commission entered its opinion and award affirming the Deputy

Commissioner's conclusions.

On 12 December 2022, RCSO timely filed notice of appeal to this Court.

## II. Standard of Review

Ordinarily, we review an opinion and award of the Industrial Commission to determine "[1] whether the Commission's findings of fact are supported by competent evidence, and [2] whether its conclusions of law are supported by its findings of fact." *Tanner v. State Dep't of Correction*, 19 N.C. App. 689, 691, 200 S.E.2d 350, 351 (1973) (citations omitted). Where, however, an appeal concerns issues of jurisdiction, "the jurisdictional facts found by the Commission, though supported by competent evidence, are not binding on this Court and we are required to make independent findings with respect to jurisdictional facts." *Williams v. ARL, Inc.*, 133 N.C. App. 625, 628, 516 S.E.2d 187, 190 (1999) (citation and internal quotation marks omitted). Notably, "[t]he issue of whether an employer-employee relationship existed at the time of [an] injury . . . is a jurisdictional fact." *Morales-Rodriguez v. Carolina Quality Exteriors, Inc.*, 205 N.C. App. 712, 714, 698 S.E.2d 91, 93 (2010) (citation omitted). Thus, this Court reviews issues as to whether an employment relationship existed between the parties de novo. *Whicker v. Compass Group USA, Inc.*, 246 N.C. App. 791, 795–96, 784 S.E.2d 564, 568 (2016) (citation omitted).

## III. Analysis

Our appellate courts have yet to address whether a law enforcement officer, working off duty as a traffic control officer, is an independent contractor excluded

from coverage under the Workers' Compensation Act; or whether he is to be considered an employee of the law enforcement agency for which he is primarily employed, an employee of the private corporation for which he is providing traffic control services, or a joint employee of both.

RCSO specifically argues the Full Commission erred in concluding Plaintiff was an employee of RCSO, rather than working as an independent contractor, at the time of his injury. In the alternative, RCSO argues the Full Commission erred in concluding Plaintiff was solely employed by RCSO as he was jointly employed by both RCSO and Truesdell at the time of his injury.

## A. Employer-Employee or Employer-Independent Contractor

We first determine whether Plaintiff was acting as an independent contractor at the time of his injury.

In order to recover under our Workers' Compensation Act, "the claimant must be, in fact and in law, *an employee of the party from whom compensation is claimed*[,]" and must have been in an employer-employee relationship with that party at the time of their injury. *Fagundes v. Ammons Dev. Grp., Inc.*, 261 N.C. App. 138, 150, 820 S.E.2d 350, 359 (2018) (citations and internal quotation marks omitted). Independent contractors are not entitled to compensation under the Workers' Compensation Act. *See Youngblood v. North State Ford Truck Sales*, 321 N.C. 380, 383, 364 S.E.2d 433, 437 (1988) ("An independent contractor is not a person included within the terms of the Workers' Compensation Act, and the Industrial Commission

has no jurisdiction to apply the Act to a person who is not subject to its provisions." (citation omitted)). An independent contractor is an individual "who exercises an independent employment and contracts to do certain work according to his own judgment and method, without being subject to his employer except as to the result of his work." *Id.* at 384, 364 S.E.2d at 437 (citations omitted). Conversely, "an employer-employee relationship exists '[w]here the party for whom the work is being done retains the right to control and direct the manner in which the details of the work are to be executed.'" *McCown v. Hines*, 353 N.C. 683, 687–88, 549 S.E.2d 175, 177 (2001) (quoting *Youngblood*, 321 N.C. at 384, 364 S.E.2d at 437). Our Supreme Court in *Hayes v. Board of Trustees* identified eight factors to consider when determining whether an individual is an independent contractor or an employee:

> The person employed [1] is engaged in an independent business, calling, or occupation; [2] is to have the independent use of his special skill, knowledge, or training in the execution of the work; [3] is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; [4] is not subject to discharge because he adopts one method of doing the work rather than another; [5] is not in the regular employ of the other contracting party; [6] is free to use such assistants as he may think proper; [7] has full control over such assistants; and [8] selects his own time.

*Hayes v. Board of Trustees*, 224 N.C. 11, 16, 29 S.E.2d 137, 140 (1944) (citations omitted). These factors are not independently determinative and must be "considered along with all other circumstances to determine whether in fact there exists in the one employed that degree of independence necessary to require his classification as

independent contractor rather than employee." *Id*.

While our Courts have yet to address whether a law enforcement officer, working off duty as a traffic control officer, is acting as an independent contractor, we consider our Supreme Court's decision in *State v. Gaines* to be instructive here in considering the *Hayes* factors, namely, whether, at the time of his injury, Plaintiff was engaged in an independent occupation or business.

In *Gaines*, a duly sworn police officer with Charlotte Police Department was killed while working off duty providing security for Red Roof Inn. *State v. Gaines*, 332 N.C. 461, 466, 421 S.E. 2d 569, 571 (1992). The officer wore his Charlotte PD uniform, service weapon, badge, and portable radio. *Id*. Further, the officer was to conform to the same standard of conduct which applied to his on-duty activities. *Id*. Nonetheless, the defendant argued he did not murder a law enforcement officer, as the officer was acting solely as a security officer for Red Roof Inn at the time of the incident. *Id*. at 470, 421 S.E.2d at 573. Our Supreme Court disagreed noting, per North Carolina law, all municipal law enforcement officers acting within their jurisdiction are to be considered peace officers—an officer who "'when off duty is still an officer and a policeman having the authority, if not indeed the duty to exercise functions pertaining to his office in appropriate circumstances, without regard to departmental rules relating to hours.'" *Id*. at 472, 421 S.E.2d at 574 (quoting 18 McQuillion, MUNICIPAL CORPORATIONS 3D, § 53.80B at 348). Further, the Court stated the official duties of law enforcement officers include: "investigative work

(including stakeouts), crowd or traffic control, and routine patrol by automobile." *Id.* at 471, 421 S.E.2d at 574. Moreover, the Court, in citing to several legislative expressions, stated, our state legislation specifically indicates "a police officer retains his official law enforcement officer status even while 'off duty' unless it is clear from the nature of his activities that he is acting solely on behalf of a private entity, or is engaged in some frolic or private business of his own." *Id.* at 472, 421 S.E.2d at 575.

In reversing the trial court, our Supreme Court held the duty of a law enforcement officer, regardless of whether he is off duty performing a secondary employment, is to act as a peace officer, whose primary duty is to "enforce the law and insure the safety of the public at large." *Id.* at 475, 421 S.E.2d at 576. Further, the Supreme Court held the officer was hired on the basis of his official status as a police officer with the advantages such a status would bring to his secondary employment—to deter crime and enforce a system of law in an area it was needed. *Id.* The Court noted that while his unformed presence alone was a symbol of the rule of law, he also served to benefit Red Roof Inn as "his ultimate or primary purpose was to keep the peace at all times without regard to his 'off-duty' or 'off-shift' status." *Id.*

Here, we recognize Plaintiff was, at the time of his injury, acting as a law enforcement officer, conducting traffic duty—an official duty of law enforcement officers. In so doing, Plaintiff retained his official status as he was neither acting solely on behalf of a private entity nor engaged in some private business of his own. Further, evidence at the hearing indicated Plaintiff was hired on the basis of his

official status as a police officer, as required by Truesdell's contract with NCDOT, and while undoubtably benefitting Truesdell by performing traffic duty, Plaintiff was also serving and protecting the safety of the community.

Plaintiff testified he was using his knowledge, skill, experience, and training as a law enforcement officer on the job. Captain Obershea testified similarly, noting the officers were "using the skills, the tools, and the equipment that's provided to them as a result of their law enforcement training and their law enforcement position." Plaintiff was outfitted in a reflective vest with his badge visibly displayed upon his belt. He also had a service weapon and personal flashlight with him. Plaintiff testified any member of the public, driving down the interstate, would have been able to obviously identify him as law enforcement. Additionally, Plaintiff was displaying his blue lights—of which only publicly owned vehicles, used for law enforcement purposes are legally allowed to display. *See* N.C. Gen. Stat. § 20-130.1(c) (2023).

Plaintiff did not have the independent use of his skill, knowledge, or training as a law enforcement officer. He was required to comply with instruction from both Truesdell and RCSO. Chief Edwards testified he and Captain Obershea were relayed instructions through Truesdell who indicated to them the way in which traffic should flow and the number of officers approved to complete the service. Further, Chief Edwards testified Plaintiff had no independent ability to freely direct traffic and was subject to discharge if he failed to comply with the tasks assigned to him by Chief

Edwards and Captain Obershea. Although Plaintiff was not in the regular employ of Truesdell, he neither selected the times he worked for Truesdell nor did he work for a fixed price or lump sum.

In applying the *Hayes* factors to the record evidence here and considering the circumstances surrounding Plaintiff's work as a traffic control officer, we hold Plaintiff failed to possess the independence necessary to classify him as an independent contractor at the time of his injury. Guided by our Supreme Court's holding in *Gaines*, Plaintiff was acting as a law enforcement officer in conducting traffic control duty and was therefore not engaged in an independent business, calling, or occupation. Further, Plaintiff did not have the independent use of his skill, knowledge, or training; was subject to discharge by RCSO if he failed to follow instruction; was under the control of both RCSO and Truesdell; was not able to select his own time or hire his own assistants; and was paid hourly instead of a fixed price or lump sum.

Because these circumstances indicate Plaintiff was not an independent contractor at the time of his injury, the Full Commission did not err in concluding Plaintiff was not an independent contractor at the time of his injury but an employee of RCSO.

**B. Sole or Joint Employment**

We must now determine whether RCSO was Plaintiff's sole employer or whether Plaintiff was also jointly employed by Truesdell.

As noted above, a claimant is entitled to recover under our Workers' Compensation Act from a party with whom he was in an employer-employee relationship at the time of his injury. *See Fagundes*, 261 N.C. App. at 150, 820 S.E.2d at 359 (internal marks and citations omitted). Our Workers' Compensation Act defines an employee to be, among other things, a person engaged in employment under a contract of hire. N.C. Gen. Stat. § 97-2(2) (2021); *see also Hollowell v. N.C. Dep't of Conservation & Dev.*, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934) (stating an employer-employee relationship "is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts" (citation omitted)).

Under certain circumstances, a person may be an employee of two different employers at the time of their injury. *Leggette v. McCotter, Inc.*, 265 N.C. 617, 625, 144 S.E.2d 849, 855 (1965). To prove simultaneous employment by two separate employers, a claimant may rely on two doctrines: the joint employment doctrine or the lent employee doctrine. *Whicker v. Compass Group USA, Inc.*, 246 N.C. App. 791, 797, 784 S.E.2d 564, 569 (2016) (citation omitted). Under the joint employment doctrine, Plaintiff must prove he was, at the time of his injury, "a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously perform[ing] services for both employers, and [] the service for each employer is the same as, or is closely related to, that for the other." *McGuine v. Nat'l Copier Logistics, LLC*, 270 N.C. App. 694, 700–01, 841 S.E.2d 333, 338 (2020) (citations and internal quotation marks omitted).

## 1. *Contract of Employment*

The joint employment doctrine requires an employment contract exist between both Plaintiff and RCSO and Plaintiff and Truesdell. While we have established there existed an employment contract between Plaintiff and RCSO, we must determine whether there also existed an employment contract between Plaintiff and Truesdell.

An employment contract may be "express or implied, oral or written[.]" N.C. Gen. Stat. § 97-2(2). An implied contract is "an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 557, 548 S.E.2d 788, 793 (2001) (citations omitted). To determine whether an implied employment contract existed between the parties, consideration must be given as to who "hired, paid, trained, and supervised" the employee. *McGuine*, 270 N.C. App. at 701, 841 S.E.2d at 339 (citations and internal marks omitted).

Plaintiff here was not under any express contract of employment with Truesdell. However, record evidence reflects the existence of an implied contract. We acknowledge Truesdell was not responsible for training Plaintiff, but Truesdell did hire, pay, and supervise Plaintiff.

A law enforcement officer, performing law enforcement duties, will always be under the command of the officers who outrank him, even when working in an off-duty capacity. Accordingly, Truesdell did not have independent direct supervision

over Plaintiff. While Plaintiff was under the direct command and supervision of his superior officers—Captain Obershea and Chief Edwards—Truesdell still exercised some supervisory authority and control over the officers. Truesdell was directly responsible for the project and making sure officers were on scene. Truesdell contacted RCSO requesting officers to perform traffic duty and provided Captain Obershea and Chief Edwards with plans of how to direct or control traffic as provided by their engineer. Although Truesdell did not speak directly with every officer on site, Truesdell was directly in control of how many officers were working as neither Captain Obershea nor Chief Edwards had the independent authority to hire additional officers. Notably, Plaintiff was not originally scheduled to work on the date of his accident. Instead, Captain Obershea and Chief Edwards, after consulting the plan and recommended officer count offered by Truesdell, believed there needed to be additional officers on site. Captain Obershea and Chief Edwards contacted Truesdell to ask permission before calling Plaintiff to request his assistance in traffic control work. This indicates a consistent level of supervision or control which Truesdell had over the officers; if Truesdell had rejected the request for an additional officer or refused to present the idea to NCDOT, Plaintiff would not have been on the scene the night of his injury.

This evidence is also indicative of Truesdell's hiring authority. Truesdell engaged Captain Obershea and Chief Edwards to secure an allotted number of law enforcement officers to perform the required traffic control work. Truesdell also

required each officer fill out a W-9 of which indicated the officers who worked for them; had the officers complete timesheets on which Truesdell signed off after submission; and directly paid each officer $55 per hour.

In considering this record evidence, we hold there existed an implied contract of employment between Truesdell and Plaintiff as Truesdell, while not responsible for training Plaintiff, maintained a level of supervision and control over the Plaintiff's work for them, had independent hiring authority, and paid Plaintiff directly for his services.

### 2. *Simultaneous Control and Performance of Closely Related Services*

Although we hold there existed a contract of employment between Plaintiff and Truesdell, we must determine whether Plaintiff was under the simultaneous control of RCSO and Truesdell while simultaneously performing similar services for both RCSO and Truesdell.

Our Court's opinion in *Whicker v. Compass Group USA, Inc.*, illustrates circumstances to consider in making such a determination. In *Whicker*, Crothall Services Group entered into a contract with Novant Health, Inc., under which Crothall agreed to provide cleaning services to several Novant healthcare facilities. *Whicker*, 246 N.C. App. at 792, 784 S.E.2d at 566. The plaintiff was employed by Crothall and assigned to clean Forsyth Medical Center. *Id.* The plaintiff, while on her lunch break at Forsyth Medical Center, fell and injured her shoulder. *Id.* The plaintiff filed a claim seeking workers' compensation and asserted she was employed

by both Crothall and Novant. *Id.* at 793, 784 S.E.2d at 567. The Full Commission concluded no employment relationship existed between the plaintiff and Novant under either the joint employment or lent employee doctrine. *Id.* The plaintiff appealed to this Court which affirmed the opinion and award of the Full Commission holding: the plaintiff failed to show she was a joint employee of Crothall and Novant as there was no express or implied employment contract with Novant and the plaintiff; Crothall and Novant did not engage in similar work; and Novant did not have control over the manner and execution of the plaintiff's work. *Id.* at 801, 784 S.E.2d at 571.

Our case can be distinguished from *Whicker*. Here, there existed an employment contract between both Plaintiff and RCSO and Plaintiff and Truesdell. Additionally, Plaintiff was under the simultaneous control of both RCSO and Truesdell. As noted above, Captain Obershea and Chief Edwards were directly responsible for supervising Plaintiff while Truesdell, having direct hiring authority, was directly responsible for Plaintiff being on scene at the time of his injury. Additionally, Truesdell had control over the execution of Plaintiff's work. Truesdell had engineers draw up traffic plans with the number of officers necessary at each location point, then relayed the information, through Captain Obershea and Chief Edwards, to Plaintiff. Further, as indicated in Chief Edwards's testimony, Truesdell had control over which officers were on scene. Chief Edwards noted, rather than losing the contract, he would have asked an officer not to return to service under the

direction of Truesdell if Truesdell had an issue with an officer's performance.

There are clear discrepancies between the Court's decision in *Whicker* and the instant case, but we note our inability to decisively state the nature of the work Plaintiff was performing at the time of his injury was of the same nature as the work performed by Truesdell. However, we are persuaded this requirement, per our Court's opinion in *Whicker*, is not required to show joint employment under the joint employment doctrine.

In *Whicker*, a prior panel of this Court stated, "[u]nder both the joint employment and lent employee doctrines, [the] [p]laintiff must show the work she was performing at the time of her injury was of the same nature as the work performed by Novant." *Whicker*, 246 N.C. App. at 800, 784 S.E. 2d at 570. The Court, without citing any supporting authority, reasoned that where the plaintiff was not required to show the work being performed—cleaning services—was of the same nature of the work performed by Novant—healthcare services—virtually any contractor retained by Novant to upkeep its facilities would be deemed an employee of Novant. *Id.* at 800, 784 S.E.2d at 570–71.

We interpret the joint employment doctrine differently. As stated, the doctrine requires, in relevant part, the service for each employer to be the same or closely related to that for the other. *See id.* at 797, 784 S.E.2d at 569 (citing *Anderson v. Texas Gulf, Inc.*, 83 N.C. App. 634, 636, 351 S.E.2d 109, 110 (1986)). This rule, provided by the Court in *Whicker*, can be traced back to our Court's opinion in

*Anderson* and further to the authoritative treatise, *Larson's Workers' Compensation Law*. *See id.*; *see also* 5, Larson, LARSON'S WORKERS' COMPENSATION LAW § 68.02, p. 68-1. Neither our Court's opinion in *Anderson* nor *Larson's Workers' Compensation Law* interpret these rules to require the work being done by the plaintiff to be of the same nature of the work performed by the company for which the plaintiff is working when injured. *See id.*

We recognize, instead, the joint employee doctrine specifically states the service being performed by the plaintiff for each employer must be the same or closely related to the service for the other, not that the nature of the work of each employer had to be the same or closely related. For, if we were to accept the Court's interpretation in *Whicker*, we would be effectively prohibiting, at a minimum, any off-duty law enforcement officer performing traffic duty from recovering from the company for which he was performing traffic duty, regardless of whether an express or implied contract existed, unless the officer was performing traffic duty for a private company whose business was also performing traffic duty.

Based on our interpretation of the joint employment doctrine, we need not reach whether the nature of the work Plaintiff was performing at the time of his injury, traffic duty, was of the same nature of the work traditionally performed by Truesdell. Further, we hold the Full Commission's conclusion which states, in pertinent part, "because the work Plaintiff was performing at the time of his injury was essentially law enforcement work, not concrete work . . . Truesdell is not liable

as a joint or special employer[,]" was made in error.

Here, Plaintiff was, at the time of his injury: a single employee; under a contract of employment with both RCSO and Truesdell; under the simultaneous control of both RCSO and Truesdell; and performing a service similar to the service he performed for RCSO when performing traffic duty for Truesdell. Thus, we hold Plaintiff was jointly employed by both RCSO and Truesdell at the time of his injury, and the Full Commission erred in concluding otherwise.

## IV.    Conclusion

For the aforementioned reasons, the Full Commission correctly concluded Plaintiff was not an independent contractor but erred in concluding Truesdell was not liable as a joint employer.

AFFIRMED IN PART AND REVERSED IN PART.

Judges MURPHY and HAMPSON concur.