IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-1201

Filed: 5 April 2016

North Carolina Industrial Commission, I.C. No. 13-733120

CRYSTAL WHICKER, Employee, Plaintiff,

v.

COMPASS GROUP USA, INC./CROTHALL SERVICES GROUP, Employer, SELF-INSURED (GALLAGHER BASSETT SERVICES, INC., Administrator); and NOVANT HEALTH, INC., Alleged Joint Employer, SELF-INSURED, Defendants.

Appeal by plaintiff from opinion and award entered 17 June 2015 by the North Carolina Industrial Commission. Heard in the Court of Appeals 10 March 2016.

*Law Offices of James Scott Farrin, by Michael F. Roessler, for plaintiff-appellant.*

*Young Moore and Henderson P.A., by Angela Farag Craddock, for defendant-appellee Compass Group USA, Inc./Crothall Services Group.*

*Orbock Ruark & Dillard, PC, by Barbara E. Ruark and Jessica E. Lyles, for defendant-appellee Novant Health, Inc.*

TYSON, Judge.

Crystal Whicker ("Plaintiff") appeals from the Opinion and Award of the Industrial Commission, which concluded she is not entitled to workers' compensation benefits from Defendant Novant Health, Inc. ("Novant"). We affirm.

I. Background

Defendant Crothall Services Group ("Crothall") is a division of Defendant Compass Group USA, Inc. ("Compass Group"). Crothall contracts with healthcare organizations to provide standardized cleaning services of their facilities. In January 2013, Novant and Crothall entered into a contract, under which Crothall provided cleaning services to thirteen Novant healthcare facilities in North Carolina, including Forsyth Medical Center. Crothall provides 230 employees to clean Forsyth Medical Center's 1.8 million square foot facility.

The "Environmental Services and Supplies Agreement" between Crothall and Novant contains over fifty pages of Novant's specific expectations of Crothall's cleaning services. For example, Novant mandated that Crothall's housekeepers "[d]ust ledges over eye level including over bed lights," "spot clean interior of outside windows up to 6 feet," and "[d]ust all low ledges, furniture and equipment to a height of 6 feet from the floor."

Plaintiff was employed as an environmental services housekeeper byCrothall, and was assigned by Crothall to work at Forsyth Medical Center. On 2 June 2013, Plaintiff clocked out and left Forsyth Medical Center for her lunch break. Plaintiff fell, while walking in the parking lot of Forsyth Medical Center, and injured her left shoulder. She reported the injury to her supervisor at Crothall. Plaintiff was treated at the Forsyth Medical Center emergency room and diagnosed with a left shoulder fracture.

Compass Group filed a Form 19 (Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission) on 19 June 2013. On the same day, Compass Group filed a Form 61 (Denial of Workers' Compensation Claim), and alleged Plaintiff's injury "is not compensable as it is not causally related to her employment."

Plaintiff ultimately returned to her position as a housekeeper. On 4 November 2013, Plaintiff was observed by two other Crothall employees smoking an "e-cigarette" during an unauthorized break. Pursuant to Crothall policy, hourly employees must adhere to Novant's non-smoking policy, which prohibits smoking or the use of smokeless tobacco products while upon the hospital's premises. Plaintiff's employment was terminated later that day.

Plaintiff filed a Form 18 (Notice of Accident to Employer and Claim of Employee, Representative, or Dependent) on or about 11 November 2013, over five months after the accident. She listed both Crothall and Novant as employers on the Form 18. On or about 12 May 2014, Novant filed a Form 61 Denial of Plaintiff's claim.

Plaintiff's claim came for hearing before the Deputy Commissioner on 23 July 2014. The Deputy Commissioner concluded Plaintiff did not sustain an injury as the result of an accident during the course and scope of her employment. The Deputy Commissioner further concluded that Plaintiff was not a joint employee of Crothall and Novant, and denied her claim for workers' compensation benefits against Novant.

Plaintiff appealed the decision of the Deputy Commissioner to the Full Commission of the North Carolina Industrial Commission. The Full Commission made extensive and unchallenged findings to support its conclusion that no employment relationship existed between Plaintiff and Novant, including:

> 6. The [Environmental Services and Supplies] Agreement [between Novant and Crothall] provides that Crothall is responsible for furnishing all management, supervisory, and productive labor personnel required to accomplish the services for which they were contracted by Novant. It further states that these personnel shall be employees of Crothall. Novant did not specify how many employees were needed to accomplish the tasks of the EVS Agreement. Novant did not enter into any agreements with Crothall's hourly workers on an individual basis.
>
> 7. Novant is not involved in the hiring or firing of Crothall employees who work in Novant facilities. Crothall is solely responsible for hiring, training, managing, and directing the productive labor in the performance of their cleaning services in accordance with Crothall's policies and procedures.
>
> 8. When Crothall hires a new employee, they are offered employment benefits such as comprehensive medical insurance, dental insurance, vision plan, and a 401K account that are solely provided by Crothall. Crothall pays for workers' compensation coverage for all of its employees operating in Novant facilities. Novant does not offer Crothall employees salary, benefits, or insurance coverage.
>
> 9. Crothall is responsible for training employees and, per the EVS Agreement, Crothall is required to instruct its employees to comply with Novant's policies related to non-employed workers (those persons working in a Novant facility that are not considered employees of Novant) in order to ensure the health and safety of the hospital's

patients and visitors, as well as ensuring compliance with all federal and state healthcare regulations.

10. Novant personnel are not allowed to control, direct, or supervise the work of Crothall employees. Novant personnel are not allowed to discipline or terminate Crothall employees for violation of a Novant policy. If a [sic] there is an issue with a Crothall employee at a Novant facility, Novant must request in writing that Crothall remove the employee from the account location.

11. Under the EVS Agreement, Crothall is also responsible for purchasing inventory and equipment that is necessary for them to provide cleaning services to Novant facilities. Crothall purchases these supplies from vendors at its sole discretion, without any input from Novant.

. . . .

14. Crothall maintains a supervisory structure consisting of a unit director, human resources manager, director of operations, three assistant directors, and nine operations managers in order to supervise and direct the labor of Crothall's hourly associates. Crothall's supervisors prepare duty sheets that outline the daily tasks the Crothall employees at FMC are supposed to undertake to perform the services that Novant contracted for in the EVS Agreement. Novant does not have any part in the creation of the duty sheets. They do not exercise any oversight into how Crothall determines how to clean the FMC facility.

15. Plaintiff was hired by Crothall to work as a housekeeper at [Forsyth Medical Center] in 2010. Upon hire, plaintiff was aware that Crothall could place her at any entity for which they provided services, but that they chose to place her at FMC. Plaintiff never entered into any contract of employment with any representative of Novant. At the time of her hiring, plaintiff was given a copy of the Crothall Hourly Employee Handbook. As part of her new-hire training, plaintiff was required to watch videos and

take assessments on topics ranging from safety to how to clean a patient's room properly. Plaintiff's training was administered by Crothall personnel. Once plaintiff was assigned to work at FMC, Crothall personnel instructed plaintiff that she was expected to adhere to certain policies that Novant had in place at FMC.

16. Plaintiff testified that she knew she was an employee of Crothall while working as a housekeeper at FMC. Plaintiff testified that the way she was trained to interact with Novant personnel, and the reason she was required to adhere to certain Novant policies, was because Novant was a client and customer satisfaction was very important to Crothall.

17. During the course of her work day, plaintiff's labor was directed by her Crothall supervisors. If plaintiff was going to be tardy or absent on a day she was scheduled to work she was to notify her Crothall shift supervisors. Any disciplinary action was also administered to plaintiff by Crothall supervisors.

The Full Commission affirmed the holding of the Deputy Commissioner in an Opinion and Award entered 17 June 2015. Plaintiff appeals.

## II. Issues

Plaintiff argues the Commission erred by concluding no employment relationship existed between Plaintiff and Novant, under either the joint employment doctrine or the lent employee doctrine.

## III. Standard of Review

This Court reviews whether an employment relationship existed between Plaintiff and Novant under a *de novo* standard of review. *Morales-Rodriguez v.*

*Carolina Quality Exteriors, Inc.*, 205 N.C. App. 712, 714, 698 S.E.2d 91, 93 (2010). "The issue of whether an employer-employee relationship existed at the time of the injury . . . is a jurisdictional fact." *Id.* (citing *Lucas v. Li'l Gen. Stores*, 289 N.C. 212, 218, 221 S.E.2d 257, 261 (1976)).

> [T]he finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.

*Id.* (quoting *Lucas*, 289 N.C. at 218, 221 S.E.2d at 261).

### IV. Employment Relationship Between Plaintiff and Novant

Plaintiff argues the Commission erroneously concluded she was not an employee of Novant at the time of her injury. We disagree.

The Commission denied Plaintiff's claim for workers' compensation benefits from Novant and concluded Plaintiff failed to prove she was an "employee" of Novant under the Workers' Compensation Act. The Commission also denied Plaintiff's claim for workers' compensation benefits from Crothall, after it concluded Plaintiff failed to prove she had suffered an injury during the course and scope of her employment with Crothall.

The Commission's Opinion and Award does not address whether Plaintiff was injured during the course and scope of her alleged employment with Novant. Novant acknowledges in its brief that there is a general exception to the "going and coming"

rule for injuries sustained by employees in parking lots owned and controlled by the employer. *See Royster v. Culp, Inc.*, 343 N.C. 279, 281, 470 S.E.2d 30, 31 (1996) ("The general rule in this state is that an injury by accident occurring while an employee travels to and from work is not one that arises out of or in the course of employment. . . . A limited exception to th[is] 'coming and going' rule applies when an employee is injured when going to or coming from work but is on the employer's premises." (citation omitted)). The parties stipulated the parking lot where Plaintiff fell was "under the exclusive control and management" of Novant. Plaintiff filed a claim against Novant after Crothall had denied her claim on the grounds that her injury was not in the course and scope of her employment with Crothall.

Under the Workers' Compensation Act, "[t]he term 'employee' means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . ." N.C. Gen. Stat. § 97-2(2) (2015). Plaintiff bears the burden of proving the existence of an employer-employee relationship at the time of the injury by accident. *Lucas*, 289 N.C. at 218, 221 S.E.2d at 261.

The parties agree Plaintiff was an employee of Crothall at the time of her injury. For Novant to be liable for Plaintiff's injury, Plaintiff must initially prove Novant was a joint employer at the time of her fall. Under some circumstances, a person can be the employee of two different employers at the time of the injury. *See*

*Leggette v. McCotter, Inc.*, 265 N.C. 617, 625, 144 S.E.2d 849, 855 (1965). As the Commission's Opinion and Award explains, Plaintiff may rely upon two doctrines to prove she is an employee of two different employers at the same time: the joint employment doctrine and the lent employee doctrine. *Anderson v. Texas Gulf, Inc.*, 83 N.C. App. 634, 635-36, 351 S.E.2d 109, 109-110 (1986).

Joint employment occurs when

> a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for work[ers'] compensation.

*Id*. at 636, 351 S.E.2d at 110 (citation omitted) (emphasis deleted). Under the lent employee doctrine:

> When a general employer lends an employee to a special employer, the special employer becomes liable for work[er's] compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.
>
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for work[er's] compensation.

*Id*. at 635-36, 351 S.E.2d at 109-10 (citation and quotation marks omitted). The doctrines are similar. Under the joint employment doctrine, the worker performs work at the same time in service to two employers. Under the lent employee doctrine, the "general employer" has temporarily "loaned" the employee to the "special employer." We agree with the Commission's conclusion that Plaintiff was not an employee of Novant under either of these doctrines.

### A. Contract with Novant

Both of these doctrines require an employment contract to exist between Plaintiff and Novant. "[A]lthough there is a mutual business interest between the two employers, and perhaps even some element of control, joint employment as to one employer cannot be found in the absence of a contract with that employer." *Id*. at 638, 351 S.E.2d at 111. The lent employee doctrine requires the employee to have "made a contract of hire, express or implied, with the special employer." *Id*. at 635, 351 S.E.2d at 109. It is undisputed that Plaintiff and Crothall entered into an express employment contract. It is also undisputed that there was no express contract of hire between Plaintiff and Novant.

Plaintiff argues an implied contract existed, which was "created by a bundle of agreements" between Novant and Plaintiff. Specifically, Plaintiff asserts: (1) Novant permitted Plaintiff to work at Forsyth Medical Center, only if Plaintiff agreed to abide by a variety of Novant's policies and procedures; (2) Novant required Plaintiff to sign

an agreement, which stated her ability to work at the hospital was "in consideration" for her agreement to abide by Novant's policies regarding confidentiality; (3) Plaintiff underwent various training sessions required by Novant, and took "tests that the hospital would give their employees," which pertained to Novant's mission, values, safety standards, privacy regulations, and infection prevention policies.

The relationship of employer-employee "is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied." *Hollowell v. N.C. Dep't of Conservation & Dev.*, 206 N.C. 206, 208, 173 S.E.2d 603, 604 (1934). The Workers' Compensation Act recognizes that employment contracts can be implied when it defines "employee" to include workers who labor under a contract that is either "express or implied." N.C. Gen. Stat. § 97-2(2).

"An implied contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Archer v. Rockingham Cnty.*, 144 N.C. App. 550, 557, 548 S.E.2d 788, 793 (2001) (citations omitted). The agreement between Crothall and Novant expressly states "[a]ll personnel required by [Crothall] to fulfill the requirements of any Agreement with [Novant] will be considered employees of [Crothall]."

In *Shelton v. Steelcase, Inc.*, 197 N.C. App. 404, 677 S.E.2d 485, *disc. review denied*, 363 N.C. 583, 682 S.E.2d 389 (2009), the plaintiff was employed by Drew, LLC ("Drew"), a company which contracted with other businesses to provide janitorial

services. *Id*. at 407, 677 S.E.2d at 489. Drew entered into a contract with Steelcase, Inc. ("Steelcase") to clean a portion of Steelcase's facility. *Id*. An unhinged door fell onto plaintiff, while she was cleaning the Steelcase facility, and caused serious injuries. She sued Steelcase for negligence and obtained a favorable jury verdict. *Id*. at 409, 677 S.E.2d at 491. Steelcase argued on appeal the trial court erred in denying its motion for JNOV where the plaintiff was an employee of both Drew and Steelcase, and therefore subject to the exclusive remedy under the Workers' Compensation Act. *Id*.

As here, the contract between Drew and Steelcase stated that Drew's employees "will be employees of [Drew]." *Id*. at 412, 677 S.E.2d at 492. Drew paid the plaintiff's salary and benefits, withheld her taxes, and paid her workers' compensation insurance. *Id*. This Court held, "[s]ince Steelcase had by contract expressly provided that [the plaintiff's] employer would be responsible for the supervision and control of [the plaintiff's] work, Steelcase had not demonstrated its entitlement to a directed verdict or JNOV on that issue." *Id*. at 406, 677 S.E.2d at 489.

Here, Plaintiff was hired, paid, trained, and supervised by Crothall. The contract between Crothall and Novant expressly states she is an employee of Crothall. "It is a well[-]established principle that an express contract precludes an

implied contract with reference to the same matter." *Vetco Concrete Co. v. Troy Lumber Co.*, 256 N.C. 709, 713, 124 S.E.2d 905, 908 (1962) (citations omitted).

Furthermore, Plaintiff's testimony shows she did not believe herself to be an employee of Novant. During her testimony Plaintiff agreed "that there was never any contract between [her] and Novant[.]" "It is essential to the formation of any contract that there be mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds." *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 911-12 (1998) (citation and quotation marks omitted). Plaintiff fails to show mutual assent from both parties, because she denies the existence of a contract.

### B. Nature of the Work

Under both the joint employment and lent employee doctrines, Plaintiff must show the work she was performing at the time of her injury was of the same nature as the work performed by Novant. Novant is in the business of operating hospitals. Plaintiff argues she was performing the work of both Crothall and Novant because the provision of cleaning services is an integral part of operating a hospital.

Under Plaintiff's rationale, virtually any contractor retained by Novant to upkeep its facilities could be deemed an employee of Novant. Novant provides medical services to the public and Crothall provides cleaning services to Novant. Novant provides medical services to patients in facilities it pays someone else to clean, but does not provide cleaning services to the general public. Likewise, Crothall

provides cleaning services to facilities where healthcare services are provided to the public, but does not provide medical treatment to members of the general public.

Plaintiff has not cited and we find no authority to support her argument that the work she performed for Crothall was essentially the same as the work performed by Novant. Plaintiff has failed to prove this element of the joint employment and lent employee doctrines.

## C. Control of Plaintiff's Work

Both doctrines also require Novant to have control over the manner and execution of Plaintiff's work. The agreement between Crothall and Novant explicitly provides that Crothall is solely responsible for hiring, training, managing and directing the personnel provided by Crothall to provide the contracted cleaning services "in accordance with [Crothall's] policies and procedures." "Employment, of course, is a matter of contract. Thus, where the parties have made an explicit agreement regarding the right of control, this agreement will be dispositive." *Harris v. Miller*, 335 N.C. 379, 387, 438 S.E.2d 731, 735 (1994).

Novant personnel lack authority to supervise, discipline, or terminate a Crothall employee for violation of a Novant policy. Plaintiff was terminated by two Crothall employees for violation of Novant's non-smoking policy. Crothall has its own management structure present on site at Forsyth Medical Center.

Crothall's employees agree to Novant's "Non-Employed Worker" policies because they have been directed to so do by Crothall as a function of customer service. The agreement between Crothall and Novant states that Crothall is responsible for cleaning Novant's facilities in accordance with their own policies and procedures. While the agreement requires all Crothall employees to comply with Novant's "Non-Employed Worker" policies, this is a condition precedent to any Crothall employee being assigned to a Novant facility. Novant requires the employees of any vendor working within their facilities to follow their policies to ensure the compliance with all federal and state healthcare regulations.

The supervision and control exercised by Novant was minimal, at best. The employee's necessary consent to the employment relationship "may be implied from the employee's acceptance of the special employer's control and direction. But what seems on the surface to be such acceptance may actually be only a continued obedience of the general employer's commands." *Collins,* 21 N.C. App. at 460, 204 S.E. 2d at 877 (citation omitted). Any direction Plaintiff may have been provided through Novant's policies was "continued obedience" to Crothall's own policies and obligations under its contract with Novant. *Id.* Plaintiff has failed to show Novant exercised control over Crothall's employees to render Plaintiff a joint or lent employee of Novant.

### V.  Conclusion

Plaintiff failed to show she was a joint or lent employee of Crothall and Novant. No express or implied employment contract existed between Novant and Plaintiff. Crothall and Novant do not engage in similar work. Plaintiff's work was not under the control of or supervised by Novant. The Commission's conclusion that Novant was not an employer of Plaintiff is affirmed.

AFFIRMED.

Judges GEER and INMAN concur.