IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-735

Filed: 7 April 2020

From the North Carolina Industrial Commission, I.C. Nos. 13-729836, PH-3618

JAMES C. MCGUINE, Employee Plaintiff,

v.

NATIONAL COPIER LOGISTICS, LLC, Employer, and TRAVELERS INSURANCE COMPANY OF ILLINOIS, Carrier and/or NCL TRANSPORTATION, LLC, Employer, NON-INSURED, Defendants.

AND

THE NORTH CAROLINA INDUSTRIAL COMMISSION v. NCL TRANSPORTATION, LLC, Non-Insured Employer, and THOMAS E. PRINCE, Individually, Defendants.

Appeal by Plaintiff from opinion and award entered 25 April 2019 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 February 2020.

> *Jay Gervasi, P.A., by Jay Gervasi, and Law Offices of Kathleen G. Sumner, by Kathleen G. Sumner and David P. Stewart, for the Plaintiff.*

> *Hedrick Gardner Kincheloe & Garofalo LLP, by M. Duane Jones and Neil P. Andrews, for the Defendant.*

BROOK, Judge.

James C. McGuine ("Plaintiff") appeals from an opinion and award entered 25 April 2019 by the North Carolina Industrial Commission ("Commission" or "Full Commission") in which the Commission concluded as a matter of law that Defendant

NCL Transportation, LLC ("NCL"), and not National Copier Logistics, LLC ("National Copier"), was Plaintiff's employer at the time of his injury. Plaintiff contends that the Commission erred by concluding that Plaintiff was employed solely by NCL, not by National Copier or jointly employed by both. For the reasons discussed below, we reverse and remand.

## I. Background

### A. Facts

Defendant Thomas E. Prince ("Prince") started shipping contractor National Copier on 17 January 2007. National Copier contracted with equipment dealers to move office equipment to and from clients.

Prince then established NCL in Ohio in January of 2007 and was its sole manager and member. According to Prince and National Copier Accounting Manager Susan German ("German"), the footprint and purpose of NCL was limited. No employees worked at the NCL location in Ohio; Prince testified that "it was a hub where drivers would pick up equipment, put equipment in, take equipment out[.]" German testified that the "hub" was essentially a warehouse. Both Prince and German testified NCL handled payroll for National Copier truck drivers. German testified further that the "sole purpose for NCL Transportation" was to be the company "that the [truck] drivers are basically paid out of . . . as well as getting the Workman's Compensation in Ohio." Prince testified along the same lines, stating

that he formed NCL for two reasons: to limit National Copier's liability and to decrease National Copier's workers' compensation insurance costs.

Sometime in the summer of 2013—before the first hearing on this matter—NCL ceased operations. At that time, Prince cancelled NCL's payroll account and began to pay the truck drivers through National Copier's account; nothing else changed regarding National Copier's day-to-day operations or the truck drivers' day-to-day work.

Plaintiff, a commercial truck driver from Greensboro, North Carolina, applied to work with National Copier in Charlotte in December 2012. The application for employment that National Copier provided him listed "National Copier Logistics" as the prospective employer. German oversaw Plaintiff's application process, interview, and hiring. Plaintiff was hired as a truck driver on 11 December 2012. German provided him with a company credit card that listed National Copier's name to use to fuel the truck. The truck Plaintiff drove bore National Copier's name and displayed National Copier's US Department of Transportation ("DOT") number.[1] Throughout Plaintiff's employment, instructions regarding his routes and deliveries came directly from Prince or from Jake,[2] National Copier's dispatcher, who was "not considered part of" NCL, and who "made the routes [and] kind of oversaw what the drivers did day to day." Plaintiff testified that he considered himself to be an employee of

---

[1] NCL did have a US DOT number, but the number was never used.
[2] Jakes's last name is absent from the record.

National Copier because he spoke only with Prince, German, and Jake, he was hired in Charlotte, and he never met anyone who identified themselves as being part of NCL. Plaintiff's W-2, pay statements, and employment verification form I-9, however, listed his employer as NCL.

On 15 February 2013, Plaintiff was injured when several sheets of plywood fell from a truck, striking Plaintiff on the head, back, neck, and left shoulder. Plaintiff was diagnosed with left shoulder acromioclavicular strain and a possible rotator cuff tear consistent with the mechanism of injury.

### B. Procedural History

Plaintiff reported his injury to German, who provided him with the workers' compensation form necessary to bring a claim against NCL in Ohio. The Ohio Workers' Compensation Bureau first denied Plaintiff's claim, but, following Plaintiff's appeal, it allowed Plaintiff's claim against NCL, concluding that Prince and NCL employed Plaintiff. At the time of the first hearing on this matter, Plaintiff's Ohio claim was under appeal from his initial denial.

Plaintiff's North Carolina workers' compensation case first went before Deputy Commissioner Myra L. Griffin in Charlotte on 19 February 2014. Deputy Commissioner Griffin entered an order on 25 February 2014 noting that "a substantial conflict of interest between Defendant-Carrier, Travelers Insurance Company of Illinois and Defendant, National Copier Logistics, LLC" could exist.

The Commission then set the matter for a de novo hearing before Deputy Commissioner Adrian Phillips. The parties stipulated to the prior hearing transcript and presented additional testimony. Deputy Commissioner Phillips entered an opinion and award on 9 June 2015 and then entered an amended opinion and award on 22 June 2015. Deputy Commissioner Phillips concluded as a matter of law that Plaintiff suffered a compensable injury on 15 February 2014. She concluded that both National Copier and NCL employed Plaintiff at the time he sustained his injury and ordered both Defendants to pay all costs for Plaintiff's medical treatment. Defendant National Copier noticed appeal to the Full Commission on 25 June 2015.

The Full Commission heard the matter on 30 November 2015, reviewing the prior opinion and award based upon the records of the proceedings before Deputy Commissioners Griffin and Phillips and considering the briefs and arguments of the parties. The Commission issued an interlocutory opinion and award on 23 January 2017. The Commission made the following conclusions of law:

> 1. Under the Workers' Compensation Act, "[t]he term 'employee' means every person engaged in an employment under an appointment or contract of hire or apprenticeship, express or implied, oral or written . . ." N.C. Gen. Stat. § 97-2(2). Plaintiff bears the burden of proving that an employer-employee relationship existed at the time an injury by accident occurred. *Hughart v. Dasco Transp., Inc.*, 167 N.C. App. 685, 689, 696 S.E.2d 379, 382 (2005).
>
> . . .
>
> 4. In the instant matter, Plaintiff has failed to prove by a

preponderance of the evidence that he was an employee of National Copier. Plaintiff failed to prove that he entered into an express or implied contract of hire with National Copier, that he was performing the work of National Copier, that National Copier had the right to control the details of his work, that he was under the simultaneous control of and simultaneously performing services for both NCL and National Copier, or that the services for each employer were closely related to that of the other. *Collins* 459, 204 S.E. 2d at 876, *Anderson* at 636, 351 S.E.2d at 110. Accordingly, the Full Commission concludes that Plaintiff was an employee of NCL at the time of the injury by accident that is the subject of this claim. N.C. Gen. Stat. § 97-2(2).

. . .

7. In the instant case, the preponderance of the evidence of record shows that Plaintiff's contract of employment with NCL was made in North Carolina, that North Carolina was NCL's principal place of business, and that North Carolina was Plaintiff's principal place of employment. *Id.* As such, the Full Commission concludes as a matter of law that the Industrial Commission has jurisdiction over Plaintiff's claim. *Id.*

. . .

9. On 15 February 2013, Plaintiff sustained a compensable injury by accident to his left shoulder arising out of and in the course of his employment with Defendant-Employer NCL. N.C. Gen. Stat. § 97-2(6).

. . .

22. The Full Commission is unable to determine from the evidence of record whether Defendant-Employer NCL was insured under the *North Carolina Workers' Compensation Act* as of 15 February 2013. As such, there is good ground to reopen the record in this matter to receive further

> evidence regarding Defendant-Employer NCL's Ohio
> workers' compensation insurance policy for the coverage
> period including 15 February 2013.

(Alterations in original.) The Commission awarded Plaintiff "payment of any remaining past medical expenses and all future medical expenses incurred or to be incurred as a result of Plaintiff's compensable left shoulder condition" and remanded the matter to the Chief Deputy Commissioner to determine whether NCL was insured under the North Carolina Workers' Compensation Act on the date of Plaintiff's injury.

Plaintiff appealed the opinion and award on 30 January 2017. This Court granted Defendant-Appellee National Copier and Travelers' motion to dismiss Plaintiff's appeal as interlocutory on 28 September 2017.

Deputy Commissioner Phillips then issued a discovery order consistent with the Full Commission's directives on remand on 11 June 2018. The parties jointly submitted additional evidence pursuant to the discovery order. The Full Commission then entered a final opinion and award on 25 April 2019, incorporating by reference the findings and conclusions of the 23 January 2017 opinion and award. The Full Commission made the following additional findings:

> 7. As of 15 February 2013, Ohio's workers' compensation
> law did not have any provisions granting the Bureau the
> authority to contract with an insurer licensed in other
> states to provide coverage to eligible Ohio employers.
> Thus, the coverage NCL obtained through the Bureau did
> not extend to provide coverage for claims filed in other

jurisdictions.

. . .

10.  As of 15 February 2013, National Copier had a worker's compensation policy providing coverage in North Carolina through Travelers Insurance Company of Illinois.  The policy did not cover employees of NCL.

11.  In July or August 2013, Mr. Prince made the decision to transfer the payroll of truck drivers employed by NCL to National Copier's payroll, re-classified the truck drivers as employees of National Copier, and obtained a North Carolina workers' compensation policy to cover the truck drivers.  The truck drivers remained so covered as of the 19 February 2014 evidentiary hearing.

12.  By July or August 2013, NCL was no longer in operation.

. . .

14.  The Full Commission finds that on 15 February 2013 NCL did not have workers' compensation insurance as required by N.C. Gen. Stat. § 97-93.

In addition to the incorporated conclusions of law from the 23 January 2017 opinion and award, the Full Commission concluded that "Defendant-Employer NCL Transportation, LLC was uninsured for workers' compensation purposes on 15 February 2013."

Plaintiff appealed on 6 May 2019.

II. Jurisdiction

The Commission's 25 April 2019 opinion and award, incorporating in its entirety its previous 23 January 2017 opinion and award, is now a final judgment, and jurisdiction is proper with this Court pursuant to N.C. Gen. Stat. § 7A-27(b).

### III. Analysis

Plaintiff contends that the Full Commission committed reversible error by concluding that Plaintiff was employed solely by NCL. Plaintiff contends that National Copier was in fact Plaintiff's joint employer. In the alternative, Plaintiff argues that the Commission erred in concluding that National Copier is not liable as a primary contractor pursuant to N.C. Gen. Stat. § 97-19. We hold that Plaintiff was employed both by NCL and National Copier and that both are therefore liable for Plaintiff's workers' compensation; we therefore need not reach Plaintiff's second argument.

### A. Standard of Review

"The question of whether [an employer–employee] relationship existed at the time of the claimant's injury is jurisdictional," *Hicks v. Guilford Cty.*, 267 N.C. 364, 365, 148 S.E.2d 240, 242 (1966), and is reviewed by our Court de novo, *Whicker v. Compass Grp. USA, Inc.*, 246 N.C. App. 791, 795, 784 S.E.2d 564, 568 (2016). Further, the Commission's "findings of jurisdictional fact are *not* conclusive on appeal, even if supported by competent evidence. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from

its consideration of all the evidence in the record." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 637, 528 S.E.2d 902, 903-04 (2000) (internal marks and citation omitted). In making findings of jurisdictional facts, this Court must "assess the credibility of the witnesses" and weigh the evidence, "using the same tests as would be employed by any fact-finder in a judicial or quasi-judicial proceeding." *Morales-Rodriguez v. Carolina Quality Exteriors, Inc.*, 205 N.C. App. 712, 715, 698 S.E.2d 91, 94 (2010).[3]

### B. Employer–Employee Relationship

An employee can, under some circumstances, operate as an employee of two employers at the same time, in which case both employers can be liable for workers' compensation. *See Leggette v. McCotter, Inc.*, 265 N.C. 617, 625, 144 S.E.2d 849, 855 (1965). "Plaintiff may rely upon two doctrines to prove [he] is an employee of two different employers at the same time: the joint employment doctrine and the lent employee doctrine." *Whicker*, 246 N.C. App. at 797, 784 S.E.2d at 569. "Joint employment occurs when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related

---

[3] Despite agreement between the parties that we must apply this standard of review for such jurisdictional questions, the dissent applies the standard of review for non-jurisdictional questions without explaining its basis for doing so.

to, that for the other." *Id.* (internal marks and citation omitted). The quite similar lent employee doctrine can be summarized as follows:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workers' compensation only if
>
> (a) the employee has made a contract of hire, express or implied, with the special employer;
>
> (b) the work being done is essentially that of the special employer; and
>
> (c) the special employer has the right to control the details of the work.

*Id.* (internal marks and citation omitted).

We thus structure our analysis around whether Plaintiff has established the requisite contract, control, and work overlap to show he was employed by National Copier and NCL such that both employers are liable for his workers' compensation claim.

### i. Employment Contract

As noted above, both joint employment and lent employee "doctrines require an employment contract to exist between" the plaintiff and the defendant. *Id.* at 798, 784 S.E.2d at 569. Employment contracts can be express or implied; implied contracts can be "inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Id.*, 784 S.E.2d at 570 (internal marks and citation omitted).

Absent an express contract (which the parties agree did not exist here between Plaintiff and National Copier), we determine whether an implied contract existed by considering who "hired, paid, trained, and supervised" the plaintiff. *Id.* at 799, 784 S.E.2d at 570. *Henderson v. Manpower of Guilford Cty., Inc.*, 70 N.C. App. 408, 319 S.E.2d 690 (1984), illustrates how this inquiry operates. In *Henderson*, Manpower of Guilford County, Inc., a company supplying temporary workers to employers, placed the plaintiff with Benner & Fields, a construction company, for whom he cut trees and cleared land. 70 N.C. App. at 409, 319 S.E.2d at 691. As part of that arrangement, Benner & Fields paid Manpower $6.25 per hour that the plaintiff worked, $4 per hour of which Manpower then passed along to the plaintiff. *Id.* After the plaintiff was injured when a tree felled by another employee struck him, the Industrial Commission concluded that he was an employee solely of Manpower. *Id.* at 409-10, 319 S.E.2d at 691. This Court reversed, concluding that, "[a]lthough no express contract existed between plaintiff and Benner & Fields, an implied contract manifestly did, since they accepted plaintiff's work and were obligated to pay Manpower for it, and Manpower was obligated in turn to pay plaintiff[.]" *Id.* at 414, 319 S.E.2d at 694.

Here, the record evinces an implied contract between Plaintiff and National Copier. First, the evidence shows that National Copier hired Plaintiff. *See Whicker*, 246 N.C. at 799, 784 S.E.2d at 570. Plaintiff traveled to National Copier's office in

Charlotte to apply for work, National Copier Accounting Manager German informed Plaintiff he would be working for National Copier, and the preprinted application listed National Copier as the prospective employer. German testified that she had "no role" at NCL; she is an employee only of National Copier, and she hired and fired drivers at Prince's direction. Second, the evidence shows that National Copier trained and supervised Plaintiff. *See id.* Jake, National Copier's dispatcher, gave the drivers route directions, and Prince testified that National Copier controlled where the drivers went on their routes. German testified that Jake—who was not "considered part of [] NCL"—"made the routes [and] kind of oversaw what the drivers did day to day."

The Industrial Commission based its conclusion that Plaintiff was employed solely by NCL on the facts that Plaintiff's W-2 tax form, pay statements, employment verification form I-9, and payroll authorization for automatic deposit list NCL as the employer. This evidence tends to suggest that NCL, not National Copier, paid Plaintiff, a fact relevant to the implied contract inquiry. *See id.* (considering who "hired, paid, trained, and supervised" in determining whether an implied employment contract existed). But even these facts favorable to Defendant are far more nuanced than is reflected in the Full Commission's opinion and award. German explained at the first hearing how the companies interacted regarding paying the truck drivers:

> [GERMAN]: [A]ll that we were running out of NCL Transportation was the payroll . . . It was not created for any other purpose but to employ[] drivers to work for National Copier Logistics. . . . really all that was run out of that, NCL Transportation, financially was payroll. And because that was a subcontractor expense to National Copier Logistics, ***National Copier Logistics would fund the payroll to the NCL Transportation bank account as an expense and then the payroll run (sic) through NCL Transportation's bank account.***

(Emphasis added.) In short, National Copier paid NCL, which, in turn, paid the truck drivers for the work they completed for the benefit of National Copier. The payor name on a paystub and the like is not determinative; our Court has found an implied contract in such instances between the worker and the company paying the company nominally paying the employee. *See Henderson*, 70 N.C. App. at 414, 319 S.E.2d at 694 (finding an implied contract between the plaintiff and Benner & Fields where Benner & Fields "accepted plaintiff's work and were obligated to pay Manpower for it, and Manpower was obligated in turn to pay plaintiff[.]"). Because the evidence tends to show that National Copier hired, trained, supervised, and functionally paid Plaintiff, we conclude that an implied contract existed between Plaintiff and National Copier.

### ii. Control

A finding of joint employment also requires that a plaintiff be "under the simultaneous control of both" employers. *Whicker*, 246 N.C. App. at 797, 784 S.E.2d

at 569 (citation omitted). Similarly, special employment requires that "the special employer ha[ve] the right to control the details of the work." *Id.* (citation omitted).

*Henderson* again articulates the factors we consider in assessing whether the requisite control exists to support finding an employment relationship. Concluding that Benner & Fields had sufficient control over the plaintiff's work, our Court focused on the facts that Benner & Fields supplied all of the "materials or tools" for the plaintiff's work; supervised temporary employees "one hundred percent"; retained discretion to terminate any temporary employees; assigned duties to temporary employees; and controlled "the manner and method in which [temporary employees] carried out [their] duties." 70 N.C. App. at 410-11, 319 S.E.2d at 692. Manpower, on the other hand, had no control over the "tree cutting work and those that did it." *Id.* at 413, 319 S.E.2d at 693. These facts led our Court to conclude that "Benner & Fields had the right to and did control the details of that work." *Id.* at 414, 319 S.E.2d at 694.

Applying this framework to the case at hand, we conclude that National Copier controlled the details of Plaintiff's work. National Copier supplied Plaintiff's "materials [and] tools" in that the truck Plaintiff drove bore National Copier's name, logo, and US DOT number. Plaintiff delivered equipment for National Copier's customers. Only Jake, the dispatcher, assigned duties to truck drivers; Jake was solely an employee of National Copier. German hired and terminated drivers for

National Copier at Prince's direction. German testified that the "sole purpose for NCL Transportation" was to pay drivers out of NCL, "as well as getting the Workman's Compensation in Ohio." Indeed, when Prince moved six truck drivers from NCL's payroll to National Copier's, nothing changed about those drivers' work; their duties, instructions, materials, and continued employment all continued to flow from National Copier. Upon an examination of the record, we must conclude that National Copier controlled the details of Plaintiff's work.

### iii. Work Overlap

The third factor necessary to find either joint or special employment is whether the work the employee does at the relevant time is essentially the same for both employers. *Whicker*, 246 N.C. App. at 797, 784 S.E.2d at 569. The plaintiff's injury in *Henderson*, for example, involved the work of Benner & Fields, namely "[c]utting trees and clearing land," supporting the conclusion that there was an employment relationship between plaintiff and Benner & Fields. 70 N.C. App. at 412, 319 S.E.2d at 693.

Here, Plaintiff's work responsibilities were driving trucks labeled "National Copier Logistics" to deliver equipment for customers and contractees of National Copier. Plaintiff never performed work for NCL that was not also the work of National Copier; as noted above, NCL merely was a payroll service for National Copier's truck drivers. We conclude that Plaintiff has met this factor because there

was no clean partition between the work of National Copier and NCL and, as such, he "was doing [National Copier's] work when injured[.]" *Id.* at 414, 319 S.E.2d at 694.

\* \* \* \* \*

In short, Plaintiff has established an implied contract between National Copier and himself and, further, that National Copier controlled his work, which, at bottom, was that of National Copier's.[4]

## IV. Conclusion

Thorough consideration of the facts, law, and the parties' arguments therefrom makes plain Plaintiff was jointly employed by NCL and National Copier. We therefore do not reach Plaintiff's argument in the alternative that National Copier and NCL had a contractor–subcontractor relationship because we conclude they were joint employers.

The award of the Industrial Commission is reversed and the matter remanded for the entry of an award in favor of the appellant in accord with this opinion.

REVERSED AND REMANDED.

Judge HAMPSON concurs.

---

[4] The dissent contends Plaintiff's claim is barred by the doctrine of judicial estoppel. Specifically, the dissent states "Plaintiff first asserted his sole employment was with NCL when he applied for Ohio workers' compensation benefits." *McGuine, infra* at ___ (Tyson, J., dissenting). This assertion is belied by the evidence. Put simply, Plaintiff's seeking recovery as an employee of NCL in Ohio is not "clearly inconsistent" with his argument before our Court that he was a joint employee of NCL and National Copier. *Whitacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888 (2004). This is another argument the Defendants have not made.

Judge TYSON dissents by separate opinion.

No. COA19-735 – *McGuine v. National Copier Logistics, LLC*

TYSON, Judge, dissenting.

The majority's opinion misapplies the standard of appellate review and reweighs the evidence to substitute and imply its preferred, but wholly unsupported, outcome to reverse the Commission's opinion and award. I respectfully dissent.

## I. Background

Thomas Prince contracted with equipment dealers and sellers to transport their office equipment to buyers. He chartered and formed National Copier Logistics, LLC ("Defendant") as a North Carolina Limited Liability Company with the North Carolina Secretary of State's Office in 2007.

Four years later, Prince formed NCL Transportation, LLC ("NCL") as an Ohio Limited Liability Company and chartered under the laws of the State of Ohio to employ truck drivers. NCL complied with all state and federal governmental regulations as a separate entity and obtained Ohio workers' compensation insurance coverage for all of NCL's employees.

James C. McGuine ("Plaintiff") was hired by NCL on or around 11 December 2012. Plaintiff's tax withholding forms, Form I-9, and pay stubs identified and designated NCL as his employer. Plaintiff represented NCL as his employer on authorization forms for direct deposit of his NCL salary into his bank account. Plaintiff never asserted or filed anything claiming Defendant was his employer from his employment date with NCL until this action was commenced.

Plaintiff was injured while at work for NCL in Ohio. Plaintiff asserted a claim against NCL as his employer under the Ohio workers' compensation policy. Plaintiff represented himself as an employee of NCL and received workers' compensation benefits due under the Ohio policy.

The action before us commenced when Plaintiff filed the present claim before the Commission and asserted he was not employed solely by NCL. Plaintiff also claimed to be either solely an employee of Defendant or jointly an employee of both NCL and Defendant.

Competent evidence in the record supports the Commission's finding and conclusion that:

> Plaintiff has failed to prove by a preponderance of the evidence that he was an employee of National Copier. Plaintiff failed to prove that he entered into an express or implied contract of hire with National Copier, that he was performing the work of National Copier, that National Copier had the right to control the details of his work, that he was under the simultaneous control of and simultaneously performing services for both NCL and National Copier, or that the services for each employer were closely related to that of the other.

The Commission concluded, "Plaintiff was an employee of NCL at the time of the injury by accident that is the subject of this claim. N.C. Gen. Stat. § 97-2(2)." Plaintiff appealed.

## II. Standard of Review

"Plaintiff bears the burden of proving the existence of an employer-employee relationship at the time of the injury by accident." *Whicker v. Compass Grp. USA, Inc.*, 246 N.C. App. 791, 797, 784 S.E.2d 564, 569 (2016) (citation omitted). The Commission's findings and conclusions are presumed to be correct unless Plaintiff carries his burden to prove otherwise. *See id.*

### III. Employment Status

Plaintiff argues he was employed solely by Defendant or, alternatively, jointly by Defendant and NCL.

### A. Sole Employment

Plaintiff made inconsistent assertions before the Ohio Workers' Compensation Bureau and before the Commission. He is judicially estopped from asserting any claim of sole employment by Defendant. Our Supreme Court has held three factors inform the decision whether to apply the doctrine of judicial estoppel in a particular case:

> First, a party's subsequent position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . Third, courts consider whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 888-89 (2004) (citations, footnote, and internal quotation marks omitted). As noted above, there is

a presumption of correctness of the Commission's order and award that is Plaintiff's burden to overcome. This Court is not bound solely to appellee's arguments and authorities to affirm the order appealed from. *See State v. Hester*, 254 N.C. App. 506, 516, 803 S.E.2d 8, 16 (2017) (citations omitted).

Applying this analysis, Plaintiff first asserted his sole employment was with NCL when he applied for Ohio workers' compensation benefits. This claim is inconsistent with his current claim of being solely employed by Defendant. Secondly, the Ohio Workers' Compensation Bureau and the Commission both concluded Plaintiff was an employee of NCL. Finally, Plaintiff actually received benefits in Ohio for an injury that occurred in Ohio as an employee of NCL, and he now seeks to receive additional benefits from Defendant, which would "impose an unfair detriment" upon Defendant. *See Whitacre P'ship,* 358 N.C. at 29, 591 S.E.2d at 888-89. Plaintiff is judicially estopped from asserting Defendant was his sole employer. *See id.* His argument of sole employment with Defendant is without merit.

## B. Joint Employment

Plaintiff also asserts Defendant was his joint employer. As the Commission properly found and concluded, joint employment only exists when a single employee, under contract with two employers, and under the simultaneous control of both, performs services for both employers at the same time, and where the service for each

employer is the same as, or is closely related to, that for the other. *Henderson v. Manpower*, 70 N.C. App. 408, 413-14, 319 S.E.2d 690, 693 (1984).

The majority's opinion purports to find Plaintiff's joint employment with Defendant through an implied in fact employment contract between Plaintiff and Defendant. It does so by disregarding the facts as found by the Commission and re-weighing the evidence to assert and imply its notion of Plaintiff's simultaneous employment by NCL and Defendant. No evidence in the record during the period relevant to the Commission's inquiry supports Plaintiff's burden to show joint employment under any theory of implied contract. *See id.*

### *1. Employment Contract*

The employer-employee relationship is contractual in nature and determined by governing contractual rules. *Hollowell v. Department of Conservation and Development*, 206 N.C. 206, 208, 173 S.E. 603, 604 (1934) (citations omitted). An employee's right to demand pay from his employer is "essential to his right to receive compensation under the Workmen's Compensation Act." *Id.* at 210, 173 S.E. at 605 (citations omitted).

"An implied [employment] contract refers to an actual contract inferred from the circumstances, conduct, acts or relations of the parties, showing a tacit understanding." *Whicker*, 246 N.C. App. at 798, 784 S.E.2d at 570 (citation omitted). To support a finding of joint employment, Plaintiff must produce evidence of a

contract of employment, express or implied, with each employer. *See Anderson v. Demolition Dynamics, Inc.*, 136 N.C. App. 603, 607, 525 S.E.2d 471, 475 (2000).

The majority's opinion correctly notes the parties stipulated that no express contract of employment existed between Plaintiff and Defendant. The only basis for finding joint employment under these facts would be an implied in fact contract between the parties.

The Commission based its conclusion that Plaintiff was employed solely by NCL on the objective facts that Plaintiff's signed tax withholding forms, pay statements, employment verification form I-9, and payroll authorization for automatic deposit all list NCL as the employer, and he was solely paid by NCL. The majority opinion's analysis of whether an implied contract existed between Plaintiff and Defendant is based on who "hired, paid, trained, and supervised" Plaintiff. *Whicker*, 246 N.C. App. at 799, 784 S.E.2d at 570.

This undisputed evidence shows NCL, not Defendant, employed, paid, and supervised Plaintiff. *See id.* (considering who "hired, paid, trained, and supervised" in determining whether an implied employment contract existed). Plaintiff stipulated and submitted that he was NCL's employee in Ohio to secure Ohio Workers' Compensation benefits from an injury that occurred in Ohio, while he was working in that state for an Ohio-chartered and based entity. Plaintiff never asserted

any claim of employment or entitlement to benefits against Defendant until this action.

It is absolutely irrelevant to the Commission's or this Court's analysis or decision that Prince formed either or both Defendant or NCL to reduce liability and costs. These reasons are the normal and legitimate bases to form all corporations, limited liability companies, limited partnerships, or other entities. *Hamby v. Profile Prods., L.L.C.*, 361 N.C. 630, 636, 652 S.E.2d 231, 235 (2007) (explaining the limited liability of the entity's owners is a "crucial characteristic" of LLCs); *see also* N.C. Gen. Stat. § 57D-2-03 (2019) ("an LLC has the same powers as an individual or a domestic corporation to do all things necessary or convenient to carry out its business").

Neither Prince's, Defendant's, nor NCL's use of these normal and legitimate uses of the corporate form supports the majority opinion's conclusion otherwise. Plaintiff failed to produce any evidence to show or support an implied contract of employment with Defendant. *See Whicker*, 246 N.C. App. at 798, 784 S.E.2d at 570. The Commission's conclusion is properly affirmed.

### 2. Control

Evidence to support a finding and conclusion of joint employment requires a plaintiff to prove that he or she was under simultaneous control of both employers. *Id.* at 797, 784 S.E.2d at 569. The majority's opinion purports to apply the framework in *Henderson v. Manpower* to conclude Defendant controlled the details of Plaintiff's

work. *See Henderson*, 70 N.C. App. at 412-13, 319 S.E.2d at 693. Under these facts, or the lack thereof, the majority's implying a contract to impose liability on Defendant is unsupported and misapplies the analysis in *Henderson*. *See id.*

Manpower's business model in *Henderson* was significantly different from that of Defendant and NCL. Defendant and NCL were formed and chartered in different states and were maintained for distinct and admittedly lawful purposes. Defendant and its employees provided office equipment transportation and delivery services. NCL employees were truck drivers. It is wholly irrelevant to the proper disposition of this appeal whether the principal shareholder or member of Defendant also wholly owned NCL, or whether NCL was a purported subsidiary of Defendant.

NCL's drivers' use of Defendant's trucks or fuel cards does not give Defendant control over NCL's drivers. Defendant's dispatcher schedules all of its deliveries, whether to NCL or others. These facts, even if true, are wholly immaterial to this analysis.

In *Henderson*, "the work that injured [the employee], was entirely the work of [the employer], who not only controlled the details of that work, but had the right to discharge plaintiff from *that* work at will." *Henderson* at 412, 319 S.E.2d at 693 (emphasis in original). In this case, Defendant's purported control over Plaintiff did not approach the level of control in *Henderson*. Plaintiff was injured while working in his capacity as a driver for NCL. Defendant did not have the authority to fire

Plaintiff. Because of the separate and distinct business functions of NCL and Defendant, the majority's opinion errs in misapplying *Henderson*'s framework to the facts of this case.

As the Commission properly found and concluded, Plaintiff failed to show by a preponderance of the evidence that Defendant exercised any control over the details of Plaintiff's express and admitted employment by NCL or that Plaintiff was jointly employed by Defendant. The Commission's opinion and award are properly affirmed.

### 3. Work Overlap

The final factor required for Plaintiff to prove joint employment exists is to show the work the employee does is the same for both employers. *Whicker*, 246 N.C. App. at 797-98, 784 S.E.2d at 569. Again, the majority's opinion cites *Henderson* to illustrate its implication of Plaintiff's joint employment with both Defendant and NCL.

The example cited in the majority's opinion does not show Plaintiff carried his burden to prove an overlap in responsibilities between NCL and Defendant as was shown between Manpower and the employer in *Henderson*. Their example goes more to the control the employer in that case had over that plaintiff.

This Court's analysis in *Whicker* is consistent with the present facts. This Court reasoned the type of services offered between purported joint employers were

distinct in *Whicker*, and therefore no work overlap existed. *Id.* at 800, 784 S.E.2d at 571.

Here, the undisputed evidence shows Defendant provides trucks, fuel, and schedules delivery endpoints. NCL provides the drivers. NCL does not assert responsibility of providing trucks, fuel, or when, where, or which products are picked up or delivered. Alternatively, Defendant did not carry the responsibility of employing, training, paying, insuring, or ensuring regulatory compliance of NCL's commercial truck drivers.

While both companies did business together and provided related or even integrated services within the same industry, Plaintiff's driving services were provided solely for NCL, an admitted separate and distinct company that hired truck drivers. No evidence supports Plaintiff carrying his burden before the Commission to prove or imply any employment, joint or otherwise, by Defendant. The Commission's order and award is properly affirmed.

## IV. N.C. Gen. Stat. § 97-19

The majority's opinion reverses the Commission on Plaintiff's first issue, due to its prohibited fact finding and substituted conclusion on appellate review to imply joint employment between Plaintiff and Defendant. The majority's opinion fails to address the second issue: whether Defendant and NCL had a contractor-subcontractor relationship. The Commission held Defendant was not a statutory

employer under N.C. Gen. Stat. § 97-19. A contractor-subcontractor relationship did not exist between Defendant and NCL. N.C. Gen. Stat. § 97-19 does not apply.

"Any principal contractor . . . who shall sublet any contract for the performance of any work" shall not be held liable to any employee of such subcontractor if the subcontractor has a workers' compensation policy in compliance with N.C. Gen. Stat. § 97-93 in effect on the date of the injury. N.C. Gen. Stat. § 97-19 (2019).

Prior precedents hold N.C. Gen. Stat. § 97-19 "cannot apply unless there is first a contract for the performance of work which is then sublet." *Cook v. Norvell-Mackorell Real Estate Co.*, 99 N.C. App. 307, 310, 392 S.E.2d 758, 760 (1990). N.C. Gen. Stat. § 97-19 does not apply to a relationship between a principal and independent contractor. *Id.* Plaintiff failed to prove Defendant was a contractor in the case at bar.

No evidence in the record shows NCL received portions of the contract price agreed upon by Defendant and its clients. NCL was a separate company and Defendant used NCL's employees' services to assist them in the performance of their contracts. N.C. Gen. Stat. § 97-19 is not triggered. Additionally, NCL had purchased and maintained a valid Ohio workers' compensation policy in place during all times of Plaintiff's employment in Ohio and at the time of Plaintiff's injury in Ohio.

The Ohio Workers' Compensation Bureau concluded Plaintiff had asserted a compensable claim and NCL was liable for Plaintiff's injuries. The stated legislative

purpose of N.C. Gen. Stat. § 97-19 is to protect workers from "financially irresponsible sub-contractors who do not carry workmen's compensation insurance." *Cook*, 99 N.C. App. at 310, 392 S.E.2d at 759 (citations omitted). That text and purpose is not at issue here. NCL maintained workers' compensation coverage for its employees, as Defendant did for its employees.

The Commission's conclusion is supported by its findings of fact, which are based upon competent evidence in the whole record. *See Chambers v. Transit Mgmt.*, 360 N.C. 609, 611, 636 S.E.2d 553, 555 (2006). For these reasons, I vote to affirm the Commission's opinion and award.

## V. Conclusion

Plaintiff has produced no evidence to carry his burden or to show any bad faith or fraud to disregard NCL's Ohio-chartered entity or to pierce its corporate veil as an alter ego or disregarded entity to Defendant. NCL observed all required corporate formalities and filings to maintain its separate legal existence. NCL also met all responsibilities to its employees to provide agreed-upon employment and required workers' compensation benefits, of which Plaintiff availed himself.

Prince, Defendant, and NCL complied with all laws in both Ohio and North Carolina. They are entitled to the protections and benefits of lawfully arranging their business transaction in both North Carolina and Ohio under these facts, as the Commission properly found upon the uncontested facts before it. *Hamby,* 361 N.C.at

636, 652 S.E.2d at 235.  NCL alone "hired, paid, trained, and supervised" Plaintiff. *Whicker*, 246 N.C. App. at 799, 784 S.E.2d at 570.

Plaintiff has failed to produce evidence or carry his burden to show entitlement to any compensation due from Defendant in North Carolina.  Having admitted he was NCL's employee in Ohio to apply for and receive benefits from an accident in Ohio, Plaintiff is judicially estopped from asserting he was solely Defendant's employee in North Carolina. *Whitacre P'ship,* 358 N.C. at 29, 591 S.E.2d at 889.  Plaintiff has not produced any evidence to show or imply joint employment under any implied contract with Defendant. *See Henderson*, 70 N.C. App. at 413-14, 319 S.E.2d at 693.

Finally, no evidence of a contractor-subcontractor relationship is shown to have existed, nor is there evidence that either Defendant or NCL failed to maintain workers' compensation coverage for their respective employees.  I vote to affirm the Commission's conclusion that N.C. Gen. Stat. § 97-19 does not apply.

The Commission's opinion and award is properly affirmed.  I respectfully dissent.